SOPHIA TOOMEY, Appellant, v. SUPREME LODGE KNIGHTS OF PYTHIAS OF THE WORLD, Respondent.

St. Louis Court of Appeals, April 12, 1898.

74 507
80 271
s147m13²
74 507
d83 527
74 507
85 100
74 507
a147s 129

1. **Benefit Societies**: INSURANCE: FOREIGN AND DOMESTIC CORPORATIONS: COMITY: FORFEITURE OF POLICY OF INSURANCE ON ACCOUNT OF SUICIDE OF APPLICANT. The applicant agreed in his application for insurance, and for a membership in the "Endowment Rank" of defendant that the benefit certificate to be issued to him should be forfeited in case of his death by suicide, and should be controlled by all laws then existing or thereafter enacted by defendant. *Held*, that in accordance with this agreement and under the principles applicable to the case that the contract of the applicant (expressed in his application for the benefit insurance that its validity should be subject to the future laws of the corporation) made the right of the beneficiary to recover on said certificate dependent upon compliance on the part of the applicant with the law of the order avoiding said certificate upon his suicide. And unless, therefore, the defendant is disabled by the statutes of the state of Missouri from interposing the defense of suicide of the applicant for the benefit certificate to the present action, the plaintiff can not recover.

2. ———: ———: ———: COMITY. There is nothing in the rule of comity which prevents any state from imposing such conditions as it sees proper upon the business of foreign corporations within its borders, or to exclude them altogether.

3. ———: ———: ———. Nor does the principle of comity extend so far as to permit a foreign corporation to exercise powers within the state which a domestic corporation of the same kind is not permitted to exercise under the constitution and policy of the state.

4. ———: ———: ———: STATUTORY CONSTRUCTION. While sections 2823 and 2824 of the revision of 1889 were in force, domestic fraternal-beneficial associations, previously incorporated, could not claim the exemption from insurance control given by such sections, unless they amended their constitution or articles of association in the manner prescribed by article 10, chapter 42, Revised Statutes 1889.

Toomey v. Supreme Lodge.

5. ——: ——: ——. The statutes of Missouri on the subject of fraternal-beneficial societies never extended to foreign corporations engaged in that business any immunities or advantages over domestic corporations of a like character.

6. ——: ——: ——. This is not only apparent from the entire exclusion of foreign corporations from the revision of 1889, but is clearly shown by the whole text of the act of 1897 (Session Acts 1897, p. 132), regulating the business of such societies.

7. ——: ——: ——. Under the agreed state of facts in this case the claim of comity as a protection for defendant against the insurance laws of this state is alike unreasonable and opposed to the declared policy of this state on the subject of the business of insurance by benevolent corporations.

8. ——: ——: ——. Under the facts in this record the defendant corporation or order was not, before the act of 1897 broadening its meaning, a fraternal-beneficial society *incidentally* engaged in issuing benefit certificates to its members, but was an organization prosecuting the business of insurance in a manner entirely separate and distinct from its other purposes.

9. Benefit Societies: INSURANCE: STATUTORY CONSTRUCTION: BOARD OF DIRECTORS CAN NOT DELEGATE JUDICIAL FUNCTIONS. The principle of corporate law inhibits the board of directors of a corporation from delegating their judicial functions to another body within the corporation.

10. ——: ——: CORPORATION: DELEGATED AUTHORITY. While the governing body of a corporation has no power to delegate the exercise of its judicial functions, it, itself, can exercise such powers in a plenary way, except as limited by the charter of the corporation, and when not thus restricted may adopt or enact a by-law in disregard of the procedure for so doing contained in a previous by-law, and this, too, by a majority vote.

11. ——: ——: ——: STATUTORY CONSTRUCTION. It is apparent from the course of legislation in this state on the subject of fraternal-beneficial societies, that such corporations when organized in a foreign state or territory, were never protected from the General Statutes of Missouri governing insurance until the act of 1881 (Session Acts 1881).

12. ——: ——: ——: ——. It is equally clear that the protection accorded by the act was withdrawn upon the adoption of section 2823 and 2824, Revised Statutes of 1889, for these two sections wholly omitted from their terms the distinct provisions of the prior act of 1881, which excepted such foreign corporations from the operation of the insurance laws of this state.

*Appeal from the St. Louis Circuit Court.*—HON.
PEMBROKE R. FLITCRAFT, Judge.

CERTIFIED TO SUPREME COURT.

FARRISH & WILLIAMS for appellant.

There are three questions raised by the record in
this case: *First.* Can the defendant, being a corpo-
ration of the District of Columbia, take advantage of
the provisions of the laws of Missouri, exempting cer-
tain associations from the operations of the insurance
laws of this state, unless the association has complied
with article 10, chapter 42, of the Revised Statutes of
Missouri. *Second.* Whether or not the defendant is
a fraternal beneficial society, and whether or not the
branch of the business conducted by the defendant,
through which the certificate in question was issued,
will be exempt from the operation of the insurance laws
of this state. *Third.* The validity of the by-laws
against suicide, and the effect of incorporating said by-
law in the application made and signed by Dennis
Toomey, the member. Upon the first proposition we
desire to call the attention of the court to section 2824
of the Revised Statutes of 1889, which is as follows:
"Any such society or association, heretofore or here-
after incorporated under the provisions of the laws of
this state, may avail itself of the benefits of the fore-
going section by amendment to its constitution or arti-
cles of association in the manner prescribed by this
article." Section 2823 is as follows: "Fraternal bene-
ficial societies may provide for the relief and aid of
their members and families, widows, orphans or other
kindred, dependents of deceased members, or for
assisting such as may be sick or disabled, from the pro-
ceeds of assessments upon the members of such society

or association; and to that end may issue to its members beneficial certificates, payable at such time and in such manner as shall therein be provided, and do such other things as shall be provided by the laws of the state; and such fraternal-beneficial societies shall not in any way be subject to the insurance laws of the state.'' The right of a foreign corporation to do business and make contracts in this state is well illustrated in the case of Berry v. Indemnity Co., 1 Cir. Ct. App. 561; the contracts made are binding on both parties, and the courts of this state will give full force and effect to same, but the court will decline to extend to a foreign corporation the exemption provided for in the statute, unless the foreign corporation has done such acts as will bring itself within the exemptions laid down in the statute. ''A state having the power to entirely exclude foreign corporations, it follows that such corporations are not citizens within the purview of the constitution of the United States, and are not entitled to privileges and immunities as citizens of the several states. A state may, therefore, discriminate against corporations chartered by another state, and in favor of its own; and such discrimination is not against the individual citizens of another state.'' Pembina Mining Co. v. Penn, 125 U. S. 181. If we are correct in this, then the court erred in refusing declaration of law number 5. The next question arising upon the record is, whether or not the defendant by the evidence and the agreed statement of facts is a fraternal benevolent association. In order to determine this question the the court must look into and be governed by the business transacted by this branch of this defendant and the mode and manner in which that business is transacted including the scope and the extent thereof. Upon the question as to whether or not the business of the defendant, conducted by the endowment rank, should

be held to be a fraternal-beneficial society, we ask the attention of the court to the following authorities: State v. Miller, 66 Iowa, 26; State v. Bankers' Mut. Ben. Soc., 23 Kan. 499; Bolton v. Bolton, 73 Me. 299; State ex rel. v. Mer. Ex., 72 Mo. 158; State v. Citizens' Benev. Co., 6 Mo. App. 163; Sherman v. Commonwealth, 82 Ky. 102.   Where the constitution provides that a law shall be passed in a certain way and shall be passed by a certain majority, it is illegal to pass the same in any other way and by any other majority. This is especially true of representative bodies like the order of Knights of Pythias.   Terry v. Baker, 1 Allen, 120.   Without special authority no one has the power to enact by-laws except the corporators or stockholders.   Carroll v. Bank, 8 Mo. App. 253.   By-laws to be valid, must be certain, and must be directed against all within the sphere of their operation, and must operate equally.   Budd v. Multnomah, 15 Ore. 413; Gaddord v. Mer. Ex., 9 Mo. App. 290.

WARWICK M. HOUGH for respondent.

All of the questions in this case are controlled exclusively by our own statutes and decisions, and as the corporate rights and immunities here involved depend wholly upon legislative enactment, the decisions of other states can not be considered, even as persuasive authority, unless the statutes of such other states are shown to be the same as our own.   The only remaining question, therefore, is whether the defendant is a fraternal-beneficial or a fraternal and benevolent association.   No distinction is to be drawn between these terms. The statutes on the subject have used both phrases, and after the use of the word "fraternal-beneficial," in the revision of 1889, the court of appeals, in the Theobald case, *supra*, uses the phrase "fraternal and benevolent," as meaning the same thing.   The order of

Knights of Pythias has been established so long, and its benevolent and charitable workings are so well known, that any court might, with great propriety take judicial notice of the fact that it is a fraternal and benevolent association.    We concede the proposition, supported by many of the authorities quoted by the plaintiff, that associations organized under general state laws, and assuming a fraternal or benevolent name are not necessarily thereby to be considered fraternal and benevolent associations, but this organization, after an existence of a quarter of a century, is publicly recognized by the congress of the United States as a fraternal and benevolent association, and is incorporated as such by a special act.    Our claims in this case, however, to the title of fraternal and benevolent do not rest alone upon that act or public notice; both the agreed statement and the oral testimony taken to supplement it, demonstrate beyond a doubt that if there is an organization within the four corners of the Union which is entitled to be considered a fraternal and benevolent association, it is the Order of Knights of Pythias.    What is a fraternal and benevolent association, which is to be considered as exempt from the operations of the insurance laws of a particular state, depends entirely upon the statute of such state, for the reason that benevolent associations may, by the laws of some states, do, in regard to issuing benefit certificates, that which will cause them to be considered life insurance companies according to the laws of those states, while according to the laws of another state, they will be regarded only as fraternal and benevolent associations, though doing the same thing.    This is most forcibly illustrated by the cases of State v. Miller, 66 Iowa, 26; State v. Nichols, 78 Iowa, 748; Sherman v. Commonwealth, 82 Ky. 102.    In the case of State ex rel. v. Benefit Association, 6 Mo. App. 163, the court

said: ''The case presented is not that of an organization whose primary object is social, literary or benevolent, and to which a feature of mutual insurance is added for the purpose of mutual aid. Such associations may exist which can not be said to be carrying on the business of insurance, and with which, we suppose, it was not the intention of the legislature to interfere.'' The agreed statement admits that the primary object of the defendant is social, literary and benevolent, and in addition, is secret and fraternal, to which is added mutual insurance for the purpose of mutual aid. In the case of State v. Brawner, 15 Mo. App. 597, Judge THOMPSON said: ''The meaning of the legislature evidently was, that societies formed in this and other states for the purpose of benevolence or charity, other than mere life insurance, may insure the lives of their members without subjecting themselves to the operation of our statutes relating to life insurance.'' The principles of the order are friendship, charity and benevolence, and the common purpose of its members is ''to gather into one mighty fraternity worthy men who appreciate the true meaning of friendship; who are cautious in word and act; who love truth; who are brave in defending right, whose honor is untarnished; whose sense of justice will prevent, to the best of their ability, a personal act or word injurious to the worthy; whose loyalty to principle, to family, to friends, to their country, and to the constituted authority under which they enjoy citizenship, is undoubted; and who at all times are prepared to do unto others as they would that others should do unto them. Plaintiff, in this case, attempts to divorce the endowment branch of the order from the main organization. He should be reminded of the fact that the suit is against the entire body, and not the arm, and if it could be so divorced

in this case, there never could be a case in which a benevolent association could issue a benefit certificate to one of its members without being subject to the insurance laws. Such manifestly, was not the intention of the legislature. Judge Thayer, in the Marlow case refers to the Brotherhood of Locomotive Engineers as being a fraternal-beneficial association within the meaning of our laws. If they are such, manifestly they would have the right to issue benefit certificates to their members, or such of their members as wanted them, and in doing so they would be transacting that part of their business precisely as an assessment insurance company would do it; and if the argument of counsel in this case has any force, it would apply with equal force to the Brotherhood of Locomotive Engineers, because their business in issuing benefit certificates to their members could stand independently of their other business and purposes. If the rule attempted to be maintained by plaintiff can be established, it is a practical amendment of our laws on the subject of benevolent associations. The contract herein, stipulating against suicide, is neither against good morals nor prohibited by any statute of this state, and there is no reason why it should not be enforced here. We respectfully submit, not only that he was bound by the by-law already in force at the time he joined, and the stipulations in his contract against suicide, but also that the anti-suicide by-law became, so far as Toomey was concerned prior to his death, the act of the Supreme Lodge itself.

BOND, J.—The agreed facts show that the defendant was incorporated as a beneficiary association under the laws of the District of Columbia in 1870, and, after some intervening amendments of its charter, was again incorporated in 1894, by special act of congress,

with all the rights, powers and privileges of a fraternal and benevolent corporation within the District of Columbia; that among other features, it has an insurance branch known as the "Endowment Rank," whose purpose is to provide indemnity for the beneficiaries of deceased members, which is paid by assessments of such members as belong to this rank; that jurisdiction over this rank, subject to the laws of the Supreme Lodge of the corporation, is confided to a board of control made up of certain officers, who are elected biennially; that Dennis Toomey, the husband of plaintiff, and while a resident of Missouri, in May, 1894, received a certificate of insurance in the sum of $2,000; that in his application therefor, he agreed that such certificate should be void in case of his death by suicide, and agreed further, so far as the rights of himself or his beneficiary in said certificate were concerned, to be controlled in all things by the laws then in force or thereafter enacted, either by the Supreme Lodge, or the board of control; that at the time of his application and the issuance to him of said certificate there was a law passed by the board of control forfeiting the certificate of any member who died by his own hand; that this law was approved and adopted by the Supreme Lodge or governing body of the corporation in 1894; that in February, 1896, Dennis Toomey committed suicide, being at the time in good standing as a member of the defendant order; that his wife, plaintiff, who was the beneficiary in the certificate issued to him, made out due proof of his death and demanded payment of the sum mentioned in said certificate; that this was refused by defendant on account of the manner of death of her husband. Thereupon this action was brought on the benefit certificate. The defenses are that it was rendered void

STATEMENT.

by the terms of the agreement of the husband in the application and the existence of defendant's by-law forfeiting policies of any of its members who committed suicide, and further that defendant is a fraternal and benevolent association, and hence not debarred from this defense by the statutes of this state. The reply denied that such was the character of the defendant corporation, or that it had enacted any valid by-law avoiding the certificate in suit or that it was exempt from the operation of insurance laws of Missouri. The case was submitted to the court sitting as a jury. For the plaintiff the court gave the following declaration of law, refusing all others requested by her, to wit: "If the court sitting as a jury finds from the evidence that the business conducted by the Endowment Rank of defendant is not of a benevolent and fraternal character, then there should be a verdict and judgment for the plaintiff." Defendant asked no declarations of law. A verdict and judgment were rendered for defendant, from which plaintiff appealed. The questions to be determined are, *first*, the validity of the contract for the forfeiture of the benefit certificate, and, *secondly*, its enforcibility in the courts of this state. Dennis Toomey agreed in his application for membership in the "Endowment Rank" of defendant, that the benefit certificate to be issued to him should be forfeited in case of his death by suicide, and should be controlled by all laws then existing or thereafter enacted by the defendant. At the time of his application the delegated agency, called the board of control, which regulated the conduct of the insurance department of the defendant order, had attempted to enact a law that all benefit certificates issued upon the application of members who might commit suicide should become, by such act, forfeited and void. This regulation of the board of control was duly published in

its books of laws and was reported by it to the governing body of defendant known as the "Supreme Lodge" and by the latter "approved and adopted" in its biennial session of 1894. It is evident both on reason and authority that the mere enactment of such a regulation by the board of control, which was a *mere* superintending agency created by the governing body of defendant, gave it no binding force or legality against any member of the "Endowment Rank" or insurance branch of the defendant order. For the principle of corporate law inhibiting a board of directors from delegating their judicial functions to another body is elementary. Supreme Lodge K. of P. v. Stein, 21 So. Rep. 559; Supreme Lodge K. of P. v. La Malta, 95 Tenn. 157; Supreme Lodge K. of P. v. Weller, 25 S. E. Rep. loc. cit. 891. While the governing body of a corporation has no power to delegate the exercise of its judicial functions, it, itself, can exercise such powers in a plenary way, except as limited by the charter of the corporation, and when not thus restricted may adopt or enact a by-law in disregard of the procedure for so doing, contained in previous by-laws, and this too by a majority vote. In other words, the directors of a corporation are empowered to enact by-laws or other regulations by a majority vote in a method wholly different or inconsistent with the provisions of previous by-laws adopted for their governance, provided always that their action is not in violation of the charter of the corporation or the general law. Dornes v. Supreme Lodge K. of P. of the World, 23 So. Rep. 191; State ex rel. v. Grand Lodge A. O. U. W., 70 Mo. App. 456–460. In accordance with these principles and under the agreed statement of facts it must be held that the contract of Dennis Toomey (expressed in his application for the benefit insurance that its validity

*Margin note: BOARD of directors of corporation can not delegate judicial authority.*

should be subject to the future laws of the corporation) made the right of the beneficiary to recover on said certificate dependent upon compliance on the part of Dennis Toomey with the law of the order avoiding said certificate upon his suicide, which law, though invalid as an enactment of the board of control, became valid when adopted and approved by the parent board of the defendant. Unless, therefore, the defendant is disabled by the statutes of the state of Missouri from interposing the defense of suicide of the applicant for the benefit certificate to the present action, the plaintiff can not recover.

Section 5855, of the Revised Statutes of 1889, is as follows: "In all suits upon policies of insurance on life hereafter issued by any company doing business in this state, it shall be no defense that the insured committed suicide, unless it shall be shown to the satisfaction of the court or jury trying the cause that the insured contemplated suicide at the time he made his application for the policy, and any stipulation in the policy to the contrary shall be void." At the time of the application of Dennis Toomey for a benefit certificate in the defendant order, and on the date of its issuance and on the date of his death, sections 2823 and 2824, of the Revised Statutes of 1889 (now repealed, Session Acts 1897, p. 132), were in force. These sections were in the chapter of the statutes providing for the incorporation *in this state* of fraternal-beneficial associations. They provide that such societies should not be subject to the insurance laws of the state, and that existing or future corporations of a similar character created under the laws of this state might have the benefit of this exemption by amendment of their constitution or articles of association, in the manner prescribed for incorporation in said chapter. Prior to these statutes

FRATERNAL-BEN-EFICIAL societies not subject to insurance laws of state.

the first attempt to exclude benevolent societies from the operation of the insurance laws of this state, was made by the separate act of the General Assembly, passed March 8, 1879. Subsequently and at the same session, the legislature adopted a general act providing for the incorporation of such societies in this state and regulating their business, which contained a clause whose effect was to repeal the prior exemptions contained in the earlier act. State ex rel. v. Merchant's Exchange Mutual Benefit Society, 72 Mo. 146, the effect of this decision being to subject such societies to the control of the insurance laws of this state. It was followed by an act of the legislature of 1881 (Session Acts 1881), which provides to wit: Section 1. "No benevolent or charitable association or society now incorporated or that may hereafter be incorporated under the laws of this state, *or of any other state or territory of the United States,*" * * * shall be deemed an insurance company or subject to the general insurance laws of this state."

The above act continued in force until superseded by sections 2823 and 2824 of the revision of 1889, which latter sections continued in force until their express repeal by the substitutionary act of 1897 (Session Acts 1897, p. 132). This latter act defined the meaning of fraternal-beneficiary associations, and authorized such associations, whether organized in this state, or in any other state, province or territory, to do business in this state upon compliance with certain specific requirements, in which event *only* they were to be exempt from the provisions of the insurance laws of this state. It is apparent from the foregoing course of legislation in this state on the subject of fraternal-beneficial societies, that such corporations when organized in foreign state or territory, were never protected from the general statutes of Missouri governing insurance, until the act

of 1881, *supra.* It is equally clear that the protection accorded by that act was withdrawn upon the adoption of sections 2823 and 2824 of the Revised Statutes of 1889, for these two sections wholly omitted from their terms the distinct provisions of the prior act of 1881, which excepted such foreign corporations from the operation of the insurance laws of this state. Admitting, therefore, for the argument on this point, that the defendant by virtue of its incorporation in the District of Columbia, and the character of its business, might be held a fraternal-beneficial society, the question recurs how was it affected by the omission in sections 2823 and 2824 of the revision of 1889 of any provisions for the exemption of *foreign* fraternal-beneficial societies from the control of the insurance laws of this state?

In other words, what was the legislative intent in excluding from these two sections the clause of the act of 1881, which expressly protected similar associations that had been incorporated under the laws of *"any other state or territory of the United States"* from the general insurance laws of this state? In arriving at the purpose of the law-making body it must be borne in mind that in the first act (1881) two essentially different classes—domestic and foreign corporations—were the express objects of legislation. The substitutional acts (secs. 2823 and 2024, R. S. 1889) wholly omitted from their provisions any reference to one of the two distinct subjects of the former act. Under the rule that all acts of a general nature "revised, amended and re-enacted" in the revision of 1889 repealed all prior laws relating to the same subject, the conclusion is inevitable that the protection hitherto afforded foreign fraternal-benevolent societies was done away with by the enactment of the two sections above referred to in the revision of the statutes of Missouri in 1889. R. S. 1889, sec. 6606; Butler Co. v. Sullivan, 108 Mo.

loc. cit. 639; Blodgett v. Schaffer, 94 Mo. 652. It is obvious, therefore, that without judicial legislation, the courts can not restore the provisions of the repealed act of 1881, which placed foreign benevolent associations in the same category with domestic benevolent associations, and that defendant must look to some other source than the legislation of this state to escape the statute prohibiting the defense of suicide in suits upon policies of insurance which was in force when defendant issued its benefit certificate to plaintiff. Can defendant rely upon the principle of comity for this purpose? We do not think so. This has been aptly termed "a law of reciprocal necessity, without which the harmony of nations would be incessantly disturbed, but which nevertheless is no more than the highest obligation of charity to love our neighbor as we do ourselves, *but not better than ourselves.*" There is nothing in the rule of comity which prevents any state from imposing such conditions as it sees proper upon the business of foreign corporations within its borders or to exclude them altogether. Pembina Mining Co. v. Penn., 125 U. S. 181 nor does the principle of comity extend "so far as to permit a foreign corporation to exercise powers within the state which a domestic corporation of the same kind is not permitted to exercise under the constitution and policy of the state." 6 Thompson on Corporations, sec. 7825; 2 Morawetz on Private Corporations, sec. 965. While sections 2823 and 2824 of the revision of 1889 were in force, domestic fraternal-beneficial associations, previously incorporated. could not claim the exemption from insurance control given by such sections, unless they amend their constitution or articles of association "in the manner prescribed by the chapter" (art. 10, chap. 42, R. S, 1889) containing the sections in question. To hold,

PRINCIPLES of comity.

therefore, that defendant being a *foreign* corporation could avail itself of the statutory exemption, without observing the conditions imposed upon a domestic corporation, would result in giving the defendant an advantage over a *home* corporation engaged in the same

business. This is clearly not within the

FOREIGN and domestic corporations.

purview of the rule of comity. The legislation of a state is the fittest exponent of its public policy. The statutes of Missouri on the subject of fraternal-beneficial societies never extended to foreign corporations engaged in that business any immunities or advantages over domestic corporations of a like character. This is not only apparent from the entire exclusion of foreign corporations from the revision of 1889, but is clearly shown by the whole text of the act of 1897 (Sess. Acts 1897, p. 132) regulating the business of such societies. According to the provisions of this act corporations organized in other states and territories for benevolent purposes are only permitted to do business in this state upon a compliance with all the duties prescribed for domestic corporations of a like character and the protection of each against the general insurance laws of the state is made to depend solely upon a compliance with the conditions imposed by the act. Our conclusion is that the claim of comity as a protection for defendant against the insurance laws of this state, is, under the agreed facts, alike unreasonable and opposed to the declared policy of this state on the subject of the business of insurance by foreign benevolent corporations.

The declaration of law made by the learned trial

judge conceded the right of the plaintiff to

DECLARATION of law.

a judgment "*if the business conducted by the* "*Endowment Rank*" *of defendant is not of a benevolent and fraternal character.*"

There is no evidence in this record which tends to prove that the business done by this branch of the defendant order was anything other than life insurance, pure and simple. In fact, it is admitted that "in issuing benefit certificates to its members the defendant pursued the same plan and acted in all respects like an assessment insurance company." This branch of the defendant order is described by the supreme court of the United States in Knights of Pythias v. Kalinski, 163 U. S. Rep., p. 294, which is, to wit: "It will be observed, however, that the endowment rank or insurance feature of this order was in reality a separate scheme and had no other apparent connection with the order than in the fact that no one who was not a member of the order could become a member of the endowment rank. Entirely separate accounts were kept with each member, as belonging to the lodge, and as a member of the endowment rank or policy holder." An examination of the methods and results of the business done by the "Endowment Rank" of defendant, or as called in its book of constitution and laws, "Insurance Branch" leads to the same conclusion expressed by the supreme court of the United States, that this department of the defendant order was engaged in the insurance business upon the identical plan pursued by ordinary assessment companies. It is clear, therefore, that upon the theory of the trial court as expressed in its declaration of law, judgment should have been rendered for the plaintiff. At the time when this cause of action arose our statutes did not define the terms fraternal-beneficial societies. An analysis of their elements and a lucid definition is found in the opinion of the United States circuit court of appeals, National Union v. Marlow, 74 Fed. Rep. 775, to wit: "A beneficial-fraternal society, within the purview of the Missouri statute, would be one whose members have

adopted the same or a very similar, calling, avocation or profession or who are working in unison to accomplish some worthy object, and for that reason have banded themselves together in an association or society to aid and assist one another, to promote the common cause. The term fraternal can properly be applied to such an association, for the reason that the pursuit of a common object, calling or profession, usually has the tendency to create a brotherly feeling among those who are thus engaged." The court cites instances as the Brotherhood of Locomotive Engineers, and states that the legislature had such organizations in mind in the chapter providing for the incorporation of fraternal-benevolent associations, by which "It is decided in effect, or intended to so declare, that when a certain number of persons among whom some natural bond of sympathy or interest existed, should form an association for self-improvement, or for the purpose of aiding one another and strengthening the bond of union, such associations might be consolidated into a corporation, and incidentally to further the ends of its creation, might provide for the relief of the members and their families, in case of sickness or death, by levying assessments and issuing benefit certificates." To the same effect in Grimes v. N. W. Legion of Honor, 64 N. W. Rep. 806. Tested by these rules a strong, if not convincing argument, arises upon the facts in this record tending to establish that the defendant order was not, before the act of 1897 broadening its meaning, a fraternal-beneficial society *incidentally* engaged in issuing benefit certificates to its members, but was an organization prosecuting the business of insurance in a manner entirely separate and distinct from its other purposes. If that view be correct, the declaration of law by the trial court could be supported. His findings of facts, however, as to the character of

*(Margin note: BENEFICIAL-FRATERNAL society defined.)*

the business of the "Endowment Rank" or "Insurance Branch" of the defendant, can not be sustained, as we have seen, under the agreed facts, admissions and testimony in the record. For the reasons heretofore given we do not think the defendant order can interpose the defense of exemption from the suicide statutes of Missouri. There is nothing in the decision of Theobald v. Supreme Lodge, 59 Mo. App. 87, out of harmony with this conclusion. The only point before the court in that case was the sufficiency of an answer alleging the character of the defendant as a beneficial-fraternal society as a reason for its exemption from the statute preventing the defense of suicide in a suit upon a policy issued to the deceased. The only point decided in the case quoted was that the peculiar phraseology of section 2823 of the revision of 1889 did not take away, by subsequent words, the exemption against the general insurance laws of this state contained in prior words of the act. It was assumed in said decision that this was the only point for review. It did not in any way pass upon the question as to whether this exemption could be claimed by any corporation, foreign or domestic, before it was shown that a compliance was had with the clause of section 2824 (1889) extending the exemption only upon a proper amendment of the "constitution or articles of association" of the corporation desiring to take advantage thereof. Nor have we overlooked Masonic Benevolent Ass'n v. Bunch, 109 Mo. 560. This was a controversy between the heirs of a beneficiary and the executor of the member of the society, the fund having been paid into court. It was held that the beneficiary had no vested interest in the certificate to him prior to the death of the member, and that (nothing in the charter to the contrary), a change of beneficiary might be affected by the last will of the member. The points in judgment in that case

in no way bear on the question under consideration. The result is that the judgment of the trial court is reversed and the cause remanded, to be tried in conformity with this opinion. Judge BLAND concurs, Judge BIGGS dissents. He thinks this opinion is opposed to Theobald v. Supreme Lodge, *supra*, and 109 Mo. 560, and asks that the cause be certified to the supreme court, which is accordingly done.