THOMAS A. THEOBALD *et al.*, Appellants, v. THE SUPREME LODGE, KNIGHTS OF PYTHIAS OF THE WORLD, Respondent.

St. Louis Court of Appeals, October 23, 1894.

Mutual Benefit Societies: VALIDITY OF BY-LAW FOR EXEMPTION FROM LIABILITY IN CASES OF SUICIDE. It is lawful for a fraternal benevolent association, organized under the laws of this state, to provide by by-law that it shall not be liable for benefits in the nature of life insurance on the death of a member by suicide, the statutory inhibition against such exemption in the case of life insurance not being applicable to such associations.

*Appeal from the St. Louis City Circuit Court.*—HON. DANIEL DILLON, Judge,

AFFIRMED.

*F. H. Bacon* and *D. G. Taylor* for appellants.

*Warwick Hough* and *Warwick M. Hough* for respondent.

ROMBAUER, P. J.—The only question presented by this appeal is whether the court erred in overruling a demurrer to defendant's answer. The plaintiffs' petition seeks to recover two thousand dollars from the defendant on a death benefit certificate issued by the defendant to the son of the plaintiffs, and payable to them upon his death. The defendant answered denying any liability. The answer,

among other things, contains the following allegations. The defendant is a fraternal benevolent association, having only charitable and benevolent features in its organization, and incident thereto issues to its members benefit certificates. It is provided by one of defendant's laws, duly adopted and in force when the certificate in question was issued, that self destruction of the member shall forfeit all claims on the certificate issued to him. The son of the plaintiffs in his application for a certificate agreed that, if his death should result by self destruction of any kind, the certificate issued upon such application should be void. The answer then proceeds to state that he willfully and voluntarily destroyed himself by shooting himself with a pistol, whereby the certificate sued on became void.

The plaintiffs demurred to this answer, *first*, because the condition that the contract should be void in case of suicide is void under the laws of this state unless the assured contemplated suicide at the time of making the contract, and, *secondly*, because the same is void as against the public policy of this state.

Upon the demurrer being overruled, the plaintiffs declined to plead any further; judgment was entered against them on the demurrer and they appealed therefrom.

It will not be contended that a contract not to commit suicide is void as against public policy, in the sense that it is against good morals. Nor can it be contended that a contract putting a premium on suicide would be enforceable. Hence, if the clause in the present contract is to be avoided at all, it must be done because it is expressly rendered void by some statute in this state.

The only statute invoked is section 5855 of the Revised Statutes of 1889, which was first adopted in 1879 and which reads as follows: "In all suits upon

policies of insurance on life hereafter issued by any company doing business in this state, it shall be no defense that the insured committed suicide, unless it shall be shown to the satisfaction of the court or jury trying the cause that the insured contemplated suicide at the time he made his application for the policy, and any stipulation in the policy to the contrary shall be void.''

The incorporation of benevolent associations was provided for by statute anterior to 1879. An act was passed in 1879, providing that they might include in their corporate powers the privilege of providing for the relief and aid of the families, widows, orphans, or other dependents of their deceased members, from the proceeds of assessments upon the members of the society. The same act provided that all such societies or associations are thereby declared exempt from the general statutes of this state in regard to insurance companies. Another act, passed on the same subject, at the same session, provided that nothing therein contained shall be construed to authorize any association formed thereunder to insure the life of any member thereof for his own benefit, or that of any other person.

This being the state of the law, the supreme court, in 1880, in the case of *State ex rel. v. Merchants' Exchange Mutual Benevolent Society*, 72 Mo. 146, decided that a benevolent society whose object it was to insure the life of its members could not claim to be exempt from the general statutes of the state in regard to life insurance companies, since the second act, passed at the session of 1879, necessarily repealed so much of the first act as withdrew corporations of that character from the operation of the general statutes on insurance. This decision becoming known, the legislature, in 1881, amended the act passed in 1879 by striking the

proviso therefrom, and also passed another act, which, among other things, provided as follows:

"Sec. 1. No benevolent or charitable association or society now incorporated, or that may hereafter be incorporated under the laws of this state, or of any other state or territory of the United States, which shall issue any certificate to, or make any promise or agreement with, its members, whereby any sum of money or benefit is to become due or payable to its sick or disabled members, or on the decease of a member, solely from the proceeds of assessment or dues collected from the members thereof, shall be deemed an insurance company, or subject to the general insurance laws of this state."

The law remained in this condition until the revision of 1889, when the present section, 2823, was enacted, as an amendment of the law of 1879. The section as it now stands concludes as follows: "Such fraternal beneficial societies shall not, in any way, be subject to the insurance laws of the state, nor under the control or supervision of the insurance department of the state, nor pay any corporation or other tax."

The argument of the plaintiffs' counsel on this branch of the case is that, since the words "shall not be deemed an insurance company," which were contained in the act of 1881, are omitted from this section, it is fair to assume that the legislature intended by this last revision to bring benevolent and charitable associations within the inhibition of section 5855, *supra*, and constitute them insurance companies doing business in this state within the purview of that section. The effect of the last clause of section 2823 is sought to be avoided, by applying to it in an inverse method the rule of *"ejusdem generis,"* so as to construe that clause as if it would read, "shall not be subject to the insurance laws of the state relating to the

control or supervision of the insurance department of the state, or the payment of taxes."

This argument is more ingenious than sound. The history of legislation on this subject in this state indicates that it was the intention of the legislature throughout to withdraw fraternal benevolent · associations not only from the control of the insurance department, but also from the provision of the general laws on the subject of insurance. When, therefore, the act of 1889 provided that they shall not be, in *any way*, subject to the insurance laws of the state, the further provision exempting them specially from certain provisions of the insurance laws did not avoid the general exemption on any sound principle of construction. That provision was probably inserted to avoid a confusion of these companies with insurance companies doing business on an assessment plan provided for by the third article of the general insurance laws, which, though ·subject to the control of the insurance department, are exempted from certain specific provisions of the general insurance laws. However, the object of the additional clause is of interest only as a matter of speculation, and can in no way affect the sweeping effect of the preceding clause.

We have stated in the preceding part of the opinion that no public policy, in the absence of statutory enactments, could uphold contracts encouraging suicide. Of course the legislature may create a public policy by statute, and it is not for the courts to say that the public policy thus created is opposed to the public policy of the common law as against good morals. All public policy based on sound morals must yield to a statute passed by the legislature within the constitutional limits of its power. But an act passed by the legislature in opposition to what would be the policy of the common law must be confined strictly within its

limits, as all other acts passed in derogation of the common law are confined. This is all the more so in the case at bar, because obvious reasons, exist why the legislature should not restrain the utmost freedom of contract between persons who, like members of these fraternal benevolent associations, while *legally* contracting with a corporation practically contract with each other on a perfect footing of equality.

It follows from the foregoing observation that the court did not err in overruling the demurrer to defendant's answer. All the judges concurring, the judgment is affirmed.