TOOMEY, Appellant, v. SUPREME LODGE KNIGHTS OF PYTHIAS.

In Banc, December 13, 1898.

1. **Life Insurance**: SUICIDE. Section 5855, Revised Statutes 1889, providing that suicide is no defense to "suits upon policies of insurance upon life" unless the insured contemplated suicide at the time he made application for the policy, does not apply to policies of assessment insurance companies, nor to those of fraternal beneficial societies.

VOL. 147 mo—9

2. ———: ———: FIXED PREMIUMS. Where by the policy the premium to be paid by the insured is fixed and the amount to be paid at his death is certain, it is a regular old line insurance policy, and the defense of suicide is unavailing, if there is no claim that the insured contemplated suicide at the time he made appli-cation for the policy.

3. ———: ———: CLASSIFICATION: NAME. The classification of an insurance company is not determined by its name, but by its con-tracts of insurance.

4. ———: ———: DOUBLE RANKS. If the methods, purposes, sources of revenue and charities of a fraternal benevolent association, were eliminated, and still a special rank within the order would re-main an insurance company, the defense of suicide will not avail in suits on benefit certificates issued to members of this special order.

5. ———: EVIDENCE: RECEIPTS AND BENEFITS PAID. That a fraternal order paid out to beneficiaries in one year more money than it re-ceived from its members is evidence that it is not an assessment or fraternal beneficial association.

*Transferred from St. Louis Court of Appeals.*

REVERSED AND REMANDED.

E. T. FARISH and R. P. WILLIAMS for appellant.

(1) An association that requires assessments from time to time on death losses, the amount of which is regu-lated by their age, is, as regards such business, an insurance company. Grimes v. N. W. Legion of Honor, 64 N. W. Rep. 806; State ex rel. v. Merchants Ex., 72 Mo. 158; Bauer v. Samson Lodge K. of P., 15 Ins. Law Jour. 81; Supreme Lodge K. of P. v. Schmidt, 98 Ind. 374. (2) The endowment rank of the defendant is a branch of the defendant known as the "insurance branch," and if it is en-tirely separate and distinct from the order of Knights of Pythias except in the one fact that none but members of the order may join the endowment rank, and the business con-

ducted by such rank is an insurance business, and the policy issued is an insurance policy, then the fact that the order through its subordinate lodges, may practice fraternity and do some acts of benevolence, would not make it a fraternal beneficial association under the laws of this state. Zalinsky v. Knights of Pythias, 163 U. S. 289; National Union v. Marlow, 74 Fed. Rep. 775; Commonwealth v. Weatherbee, 105 Mass. 149; State v. National Ass'n, 35 Kan. 51; Farmer v. State, 69 Texas, 276. (3) The certificate in question is an absolute promise to pay $2,000 to the plaintiff upon the death of Dennis Toomey, upon the condition that he pay, from month to month, a certain sum of money called "monthly payments," which had been fixed by the laws of the defendant. There is nothing in the certificate which would make any difference between it and an insurance policy issued by a company doing business on the assessment plan. Mulroy v. K. of P., 28 Mo. App. 463; Supreme Council A. L. of Honor v. Lannour, 16 S. W. Rep. 633; Com. v. Weatherbee, 105 Mass. 149; Jacobs v. Omaha Life Ass'n, 142 Mo. 49.

WARWICK M. HOUGH for respondent.

(1) Section 5855, Revised Statutes 1889, is to be limited in its application to those policies of insurance issued by the companies contemplated by article II, chapter 89, Revised Statutes 1889. Jacobs v. Omaha Life Ass'n, 142 Mo. 49; Ticktin v. Casualty Co., 87 Fed. Rep. 543. (2) Benefit certificates issued by benevolent and fraternal or fraternal beneficial associations, are not policies of insurance, within the meaning of those terms as used in the statutes. Masonic Ass'n v. Bunch, 109 Mo. 577; Martin v. Stubbins, 126 Ill. 403. (3) The Revised Statutes of 1889 on the subject of fraternal beneficial associations, contemplate that such associations should do a mutual insurance

business on the assessment plan, limited to their own membership, without being considered insurance companies, or subject to any of the insurance laws of the state. Act of March 8, 1831; R. S. 1889, sec. 2823; Theobald v. Supreme Lodge, 59 Mo. App. 87; State ex rel. v. Benefit Ass'n, 6 Mo. App. 172; Haynie v. Knights Templars, 139 Mo. 416. (4) The defendant in this case is a fraternal beneficial association within the meaning of those terms as used in the revision of 1889. State ex rel. v. Benefit Ass'n, 6 Mo. App. 172; State ex rel. v. Exchange Mutual Benefit Society, 72 Mo. 146; Mulroy v. Knights of Honor, 28 Mo. App. 471; National Union v. Marlow, 74 Fed. Rep. 775; Haynie v. Knights Templars, 139 Mo. 416. (5) There was in this case a valid by-law against suicide which controlled the cer-tificate in question, and irrespective of there being a valid by-law on the subject, there was a valid contract that suicide should forfeit Toomey's rights. Bacon's Benefit Societies [new Ed.], p. 132; Pfister v. Gerwig, 122 Ind. 567; Angell & Ames on Corp. 328; Bank v. Ridgley, 1 Harris & Gill, 324; Morawetz on Corp. [2 Ed.] 498; State v. Curtiss, 9 Neb. 335; Henry v. Jackson, 37 Ver. 431; Bank v. Pierson, 58 Miss. 421; State ex rel. v. Grand Lodge, 70 Mo. App. 456; Dornes v. Knights of Pythias, 23 So. Rep. 191.

MARSHALL, J.—This is a suit to recover $2,000 on a policy of insurance, issued by defendant, upon the life of Dennis Toomey, the late husband of the plaintiff. The circuit court rendered judgment for the defendant, but upon appeal, by the plaintiff, the St. Louis Court of Appeals reversed that judgment and remanded the case, 74 Mo. App. 507. Judge Biggs dissented, and because he was of opinion that the decision of that court was opposed to the decision of that court in the case of Theobald v. Supreme Lodge, 59 Mo. App. 87, and to the decision of this court in Masonic

Benevolent Association v. Bunch, 109 Mo. 560, the case was certified to this court.

## I.

At first blush and without a careful analysis the decision of the St. Louis Court of Appeals in this case and the decision of that court in the case of Theobald v. Supreme Lodge, 59 Mo. App. 87, might be thought to be in conflict, but such is not the real fact. The Theobald case went to the court of appeals upon petition, answer and demurrer to the answer, which had been overruled by the circuit court—the plaintiff refusing to plead further. The answer alleged that defendant was "a fraternal benevolent association, having only charitable and benevolent features in its organization, and incident thereto issues to its members benefit certificates;" that its by-laws provided that if the member committed suicide he should forfeit all claims on the certificate and that the deceased did commit suicide and hence it was not liable on the certificate. The demurrer admitted these facts, and the only questions decided in that case were: first, that section 5855, Revised Statutes 1889, which prohibits the defense of suicide being interposed unless the insured contemplated suicide at the time he made application for the policy, did not apply to fraternal benevolent associations; and, second, that stipulations in a contract of insurance avoiding the contract in case of suicide, were not against public policy in this State.

The facts upon which this case was presented to the court of appeals, put a very different phase upon the character of the defendant, and conclusively demonstrate that instead of being "a fraternal benevolent association, having only charitable and benevolent features in its organization, and incident thereto issues to its members *benefit certificates,*" as it represented itself to be in the Theobald case,

it is fraternal and beneficial to *all* of its members, but that as to about ten per cent of them—those who belong to what it calls the "Endowment Rank"—it is a regular, old line insurance company, and issues a straight policy of insurance, whereby in consideration of fixed premiums, to be paid monthly, it promises to pay *a sum certain* upon the death of the insured. The decision in the Theobald case was correct upon the facts as they were presented to the court in that case, but it would be gross injustice to that court to hold, that with the facts presented by this record, that court would reach the same conclusion in this case that it did in the Theobald case. It does not admit of argument therefore, that the two decisions do not conflict.

The case of The Masonic Benevolent Association v. Bunch, 109 Mo. 560, was an interpleader, wherein the association had paid the money into court, and the heirs and the executor of the deceased were litigating the question as to which was entitled to the fund. Manifestly no such question as is involved in this case was involved in that case. In fact it does not even appear how the deceased in that case came to his death. It did appear, however, that the association was "a charitable corporation for insuring the lives of members of the Masonic fraternity upon the assessment plan," and that the provision of its constitution in this regard was: "Upon the death of a member of the association, the directors shall pay to the heirs or legal representatives of the deceased member of the association $5,000, or a sum equal to $1 for each member of the association, less the necessary expense of collecting the same, not to exceed ten per cent. All surplus of assessment shall be placed in the surplus fund." It is hard to conceive how any one could fall into the error of believing that the decision of the court of appeals in the case at bar is opposed to the decision of this court in the Bunch case.

But the case is here in a method provided for by the Constitution, and it is our duty to examine and decide it, "as in case of jurisdiction obtained by ordinary appellate process." Were it not for this mandate of the Constitution and for the earnestness and ability of counsel shown in the argument of the case, we would simply approve the result reached by the St. Louis Court of Appeals, as that result fully accords with our views, and the reasoning employed by that court is both persuasive and convincing.

## II.

Originally the defendant was purely a fraternal benevolent association, but in 1882, its charter was amended so as to provide: "That the said Supreme Lodge, shall have power to establish the uniform rank, and endowment rank, upon such terms and conditions and governed by such rules and regulations as to the said Supreme Lodge may seem proper." In 1888 it adopted a constitution for the government of the endowment rank, and for the form of application for membership, and also for the certificate of membership in the endowment rank. The certificate recited that in consideration of the representations and declarations made in the application, and of the payment of the prescribed admission fee, and of the payment of all assessments and dues as required, and of full compliance with all laws governing the endowment rank "now in force or that may hereafter be enacted by the Supreme Lodge Knights of Pythias of the World," and of the member being in good standing at the time of his death, the board of control of the endowment rank, Knights of Pythias of the World, would pay to the beneficiary named in the certificate, a specified sum of money. "Provided, however, that if at the time of death of said brother, the proceeds of one assessment

on all the members of the endowment rank shall not be sufficient to pay in full the maximum amount of endowment held under this certificate, then there shall be paid an amount, less ten per cent for expenses, equal to the proceeds of one full assessment on all remaining members of the endowment rank, and the payment of such sum to the beneficiaries mentioned herein, shall be in full of all claims and demands under and by virtue of this certificate."

In 1892, the defendant adopted a new constitution, and prescribed the form of application and certificate of membership and table of monthly payments, for the endowment rank, which, among other things, provided as follows: "To issue certificates of membership and provide for the payment of the same in the sum of one thousand dollars, two thousand dollars, three thousand dollars, four thousand dollars, or five thousand dollars as may be applied for under the general laws adopted by the board of control for the government of sections in the endowment bank and the membership thereof." The table of monthly payments provided for fixed amounts or premiums to be paid monthly, graduated according to the age of the member.

The difference between these two schemes, marks the difference between regular old line insurance, and insurance on the assessment plan.

There are three kinds of insurance companies under our law: First, regular or old line, where for a fixed premium, payable, without condition, at stated intervals, a sum certain is to be paid upon death without condition (secs. 5811 and 5812, art. 2, chap. 89, R. S. 1889); second, insurance companies on the assessment plan, where the assessment is fixed, but the amount to be paid is dependent "upon the collection of an assessment upon persons holding similar contracts" (sec. 5860, art. 3, chap. 89, R. S. 1889); and, third, fraternal-beneficial associations, where the assessments are fixed by the associations and the amount to be paid

in case of death is derived "from the proceeds of assessments upon the members of the association" (sec. 2823, art. 10, chap. 42, R. S. 1889).

As to the first class,—regular or old line—section 5855, Art. 2, Chap. 89, R. S. 1889, provides: "In all suits upon policies of insurance on life hereafter issued by any company doing business in this State, it shall be no defense that the insured committed suicide, unless it shall be shown to the satisfaction of the court or jury trying the cause, that the insured contemplated suicide at the time he made his application for the policy, and any stipulation in the policy to the contrary shall be void."

This provision, it has been held, applies only to the first class above specified and does not apply to the second class— assessment companies (Haynie v. Knights Templar & Masons' Life Indemnity Co., 139 Mo. 416) because they are organized under Art. 3, Chap. 89, R. S. 1889, and it does not apply to the third class—fraternal-beneficial associations— because by Sec. 2823, Art. 10, Chap. 42, R. S. 1889, it is provided that, "such fraternal-beneficial societies shall not in any way be subject to the insurance laws of the State."

Whether this discrepancy was designed or was an oversight by the General Assembly, it is not the province of the courts to say, but it appears it was a mistake, for in 1897 the legislature extended the law to all classes of insurance (Acts 1897, p. 129).

It is clear that the liability of the defendant depends upon the class to which it belongs.

Reviewing the history of the defendant we find that it has passed through three stages of evolution; first: It was purely fraternal-beneficial and had no insurance feature; second: It was fraternal-beneficial, but also had a right to do business as an assessment company, within the meaning of section 5860, Art. 3, Chap. 89, R. S. 1889; and third: It

is fraternal-beneficial, but has a right to do business upon the regular or old line plan, as defined by sections 5811 and 5812, Art. 2, Chap. 89, R. S. 1889.

The material part of the policy sued on is as follows: "In consideration of the payment by said member of the prescribed fee and the payment hereafter to said endowment rank of all monthly payments, assessments and dues as required, and the full compliance with all the conditions herein contained and with the laws governing this rank, now in force or that may hereafter be enacted by the Supreme Lodge Knights of Pythias of the World, or the board of control of said rank, and shall be in good standing under said laws, the board of control of the endowment rank Knights of Pythias of the World, will pay to Sophia Toomey, his wife, the sum of two thousand dollars out of the endowment fund of the rank in accordance with, and under the laws governing the payment of benefits, upon due notice and satisfactory proof of death, and good standing in the rank at the time of death," etc.

Thus under defendant's amended charter of 1892, it had power to insure the lives of members of the endowment rank of the order for a certain sum, upon the payment of fixed monthly premiums, and it exercised that power when it issued the policy sued on. The amount to be paid does not depend "upon the collection of an assessment upon persons holding similar contracts," and hence, it is not an assessment company, within the meaning of section 5860; nor is the amount to be paid derived "from the proceeds of assessments upon the members of the association," and therefore it is not a fraternal-beneficial association, within the definition given of such societies by section 2823, R. S. 1889. The premium to be paid by the insured is *fixed,* and the sum to be paid by the defendant to the beneficiary is *certain*—two thousand dollars flat. Thus whether we reason by induction

or exclusion the result is the same, it is a regular old line policy of insurance, and section 5855, R. S. 1889 applies, and renders the defense of suicide unavailing in this case, for it is not even pretended that the insured contemplated suicide at the time he made his application for his policy.

This court has lately reviewed and settled the law in this State in accordance with the views herein expressed. Jacobs v. Omaha Life Ins. Co., 142 Mo. 59; and same case on second appeal in 146 Mo. 523. It is immaterial what name a company may adopt, its liability is determined by the character of its contracts of insurance, and the law then places the company in its proper class. [Logan v. Fidelity & Casualty Co., 146 Mo. 114.] It is also immaterial that the defendant is also a fraternal benevolent organization as to all the members of the endowment rank, and also as to the other ninety per cent of its members who are not members of the endowment rank, for that feature of the organization was totally distinct from the endowment rank as to its methods, character, sources of revenue, purposes and charities, all of which features might be eliminated and it would remain an insurance company. [Knights of Pythias v. Kalinski, 163 U. S. 289; State ex rel. v. Miller, 66 Iowa, 26; State ex rel. v. Bankers' Mut. Ben. Soc., 23 Kansas, 499; Bolton v. Bolton, 73 Me. 299; State ex rel. v. Merchant's Exchange, 72 Mo. 158; Masonic Aid Ass'n v. Taylor, 21 Ins. Law Journal, 695; Grimes v. N. W. Legion of Honor, 64 N. W. Rep. 806; State ex rel. v. National Ass'n, 35 Kansas, 51; Sherman v. Commonwealth, 82 Ky. 102; National Union v. Marlow, 74 Fed. Rep. 775.]

If anything more was necessary to show that the defendant is an old line insurance company, it is found in the fact that of the 464,539 members of the order of Knights of Pythias, only 48,174 are members of the endowment rank; that from July, 1895, to July, 1896, the income of the

endowment rank was $1,117,718.29, and that on July 1, 1896, it had on hand $452,884.65 excess over what was necessary to pay death losses; that from July, 1894, to July, 1896, it paid out to organize sections $13,997.33, for advertising $4,739.78, for investigating death claims $7,231.20, for medical examiners' fees $24,263.35, for attorneys' fees and expenses, contesting cases, $11,756.20 and for salaries and office expenses, $19,163.81, and finally that in Missouri during the year 1895, it received from the 2,256 members of the endowment rank in this State, $36,723.20, and paid out to beneficiaries, $37,966 or a little over one thousand dollars more than it received, which would not have been the case if it was an assessment or fraternal-beneficial association.

This goes to the root of the controversy, and it is therefore unnecessary to decide the other questions discussed. The conclusion of the court of appeals was right, and the judgment of the circuit court wrong, and its judgment is therefore reversed and the cause remanded to that court for trial in accordance herewith. All concur, except SHERWOOD, J., who did not sit and took no part herein.