WILLIAM W. SMITH et al., Respondents, v. SUPREME LODGE KNIGHTS OF PYTHIAS, Appellants.

St. Louis Court of Appeals, March 13, 1900.

1. Insurance: CONTRACT OF INSURANCE, WHEN MADE: COMMON LAW. In the case at bar the contract of insurance between the defendant and the member of its endowment rank was made and executed in the State of Kansas, where, it was proven, the common law prevails without any modification as to contracts of the character in suit.

2. ———: ———: INSURER, LIABILITY OF UNDER CONTRACT: COMMON LAW. That parties to contracts for life insurance may stipulate that the liability of the insurer shall depend in whole or in part upon the manner of death of the assured, whether by natural causes or by self-destruction, is a rule of the common law.

Smith v. Supreme Lodge K. of P.

3. ———: ———: AMENDMENT OF CERTIFICATE BY MEMBER-SHIP: MUTUAL BENEFIT SOCIETY: BY-LAWS. Even though a certificate of membership in a mutual benefit society contains upon its face the explicit statement that the contract of insurance, evidenced thereby is subject to its by-laws and to any amendments thereto which may thereafter be made, it is subject to the implied condition that any subsequent amendment shall be reasonable; and any amendment which entirely changes the scheme of insurance and makes a radical departure from the fundamental plan, is not a reasonable exercise of the reserved power of amendment.

4. ———: ———: ———. An amendment designed to perfect in matter of form and detail, the original plan, will, if otherwise unobjectionable be within the terms of the contract, but one calculated to defeat or destroy that plan or to substitute for it some other and essentially different scheme, will be an abuse of the power, a violation of the contract, and an unreasonable and invalid amendment.

5. ———: ———: BY-LAWS FOR FUTURE GOVERNANCE OF MEMBERS MUST BE REASONABLE: SUICIDE AS A DEFENSE ON INSURANCE POLICY. It is not a reasonable exercise of the right reserved to an insurance order to make by-laws for the future governance of its members to enact one which in effect will take away about one-half of the sum, it had agreed to pay the member, and suicide as a defense to a policy of insurance, when enacted into a by-law by way of amendment, is likewise unreasonable.

6. ———: ———: CONTRACT OF INSURANCE, MODIFIED WHEN. A contract of insurance can not be materially modified or changed without the consent of the members.

7. ———: ———: ———: ASSENT OF ASSURED. In the case at bar it is held that the by-law pleaded by defendant in reduction of its liability was not within the legal purview of the agreement made by the assured when he obtained his insurance, and not having been expressly assented to by him, was therefore invalid and inoperative against the plaintiff.

Appeal from the Greene Circuit Court.—*Hon. James Tilford Neville*, Judge.

AFFIRMED.

*Warwick M. Hough* for appellants.

(1)   The contract in question and the rights of beneficiaries thereunder are controlled by the by-laws subsequently enacted.   Supreme Lodge v. La Malta, 95 Tenn. 157; Supreme Commandery v. Ainsworth, 71 Ala. 436; Toomey v. Supreme Lodge, 74 Mo. App. 517; Supreme Lodge v. Stein, 75 Miss. 107; Dornes v. Supreme Lodge, 75 Miss. 466; Supreme Lodge v. Kutscher, 179 Ill. 340; Supreme Lodge v. Trebbe, 179 Ill. 348.   (2) The application having been made and the certificate having been delivered in Kansas, the contract in question is controlled by the laws of that state.   Berry v. Indemnity Co., 46 Fed. 439; Same v. Same, 50 Fed. 511; Roach v. St. Louis Type Foundry, 21 Mo. App. 118.   (3) Plaintiffs in this case and their assignors, not having been related to, nor dependent on the deceased member, Kenney, are not entitled to any benefits.   Tittworth v. Tittworth, 40 Kan. 576; Grand Lodge v. Nairn, 60 Mich. 44; Grand Lodge v. Elsner, 26 Mo. App. 117; Masonic Ass'n v. Bunch, 109 Mo. 578; Keener v. Grand Lodge, 38 Mo. App. 549; Carson v. Vicksburg Bank, 37 L. R. A. 559.

*R. L. Goode* for respondent.

(1)  The defendant was informed by Kenney's application to change the beneficiary; that the new ones named, Mrs. Calhoun and Mr. Osburn, were not related to nor dependent on him; and having issued the second certificate and collected the assessments thereon for twelve years with full knowledge of the facts, is estopped to set up the defense that the change was invalid.   Blue v. Mutual Benefit Life Ass'n, 11 N. E. 331; Morrison v. Ins. Co., 59 Wis. 162; 18 N. W. 13; Mers v. Franklin Ins. Co., 52 Mo. App. 181; Hanley v. Life Ass'n,

69 Mo. App. 380; 4 Mo. App. 253; Merchants v. Supreme Lodge, etc., 42 Mo. App. 627. (2) It is not a reasonable interpretation of the clause in Kenney's application, "I hereby agree to conform to and obey the laws, etc., now in force or that may hereafter be enacted, or submit to the penalties therein contained," or of the words in the certificate that it was issued in consideration of payment, etc., and "the full compliance with all the laws governing this order now in force or that may hereafter be enacted," to say that these constituted a promissory warranty against suicide while insane in the event a by-law was enacted on the subject. Such a construction is forced, and by-laws of orders must be construed reasonably. 1 Thompson on Corporations, sec. 948; Boogher v. Ins. Co., 6 Mo. App. 592; Higgins v. McCrea, 116 U. S. 671. (3) The several provisions in the laws of the order about suicide, the application blanks provided, and the certificate, are inconsistent with the view that those by-laws were intended to apply to policies already outstanding. "By-laws of a mutual benefit society will be construed to only be prospective in their action, unless the intention to make them retroactive clearly appears. It will be presumed that an amendment to the by-laws was not intended to affect a contract of insurance previously issued by the society. Retroactive by-laws are regarded as impolitic and unwise, and they may often be said to be unjust and oppressive. Niblack on Ac. Ins. and Ben. Societies, sec. 27; Wist v. Grand Lodge, 22 Ore. 271; 29 Am. St. R. 603; Hobbs v. Association, 82 Iowa, 107; Morrison v. Ins. Co., 59 Wis.; Benton v. Brotherhood, 146 Ill. 570; 34 N. E. Rep. 939. (4) Death by suicide was within the risk originally insured against (this is certainly true by all the authorities if committed while insane, as the court found was the fact in Kenney's case), and the by-laws subsequently enacted, even

if designed to act retroactively, will not be permitted to impair the contract without the express consent of the assured. This is true notwithstanding he may have agreed to observe the present and future rules of the order.     Starling v. Supreme Council of Royal Templars, 108 Mich. 440; Wheeler v. Supreme Sitting Order Iron Hall, 110 Mich. 437; Hale v. Ins. Co., 31 Atl. Rep. 1066; Becker v. Benefit Society, 144 Pa. St. 232; 22 Atl. Rep. 699. (5) The rule that forfeitures and provisions working them are unfavorably regarded, is stringently applied to policies in mutual benefit societies. Laws invoked for that purpose should be so construed as to avoid a forfeiture if the language will admit, and the burden is in all cases on the order to fully establish the facts relied on to make out that defense. Seibert v. Supreme Council Order of Friends, 23 Mo. App. 268; Connelly v. The Shamrock Benevolent Society, 43 Mo. App. 283; Chadwick v. Order Triple Alliance, 56 Mo. App. 463; Margaret Frame v. Sovereign Camp Woodman, 67 Mo. App. 127; Ballou v. Giles, 50 Wis. 614; Bacon on Benefit Societies and Life Ins., sec. 247; Supreme Lodge K. P. v. Schmidt, 98 Ind. 374.

BOND, J.—The defendant was incorporated by a special act of Congress in 1894 to succeed and continue a former corporation known as the Supreme Lodge Knights of Pythias of the World, and is answerable for all liabilities of its predecessor.     For the transaction of the business in which both corporations engaged, each of them established what is called an endowment rank divided into sections and classes, which was intended to constitute a separate department for insuring such members of the order as should also become members of said endowment rank.     On August 14, 1878, T. E. Kenney became a member of a subordinate lodge (Mystic Lodge No. 17) of the order, as then incorporated, which was situated at Fort Scott, Kansas, and applied to and became a member of

the endowment rank (section No. 60) operated in connection with said subordinate lodge, and received a benefit certificate on his life, in which said section No. 60 was designated as the beneficiary. The application for this insurance recited that Kenney agreed "to conform to and obey the laws, rules and regulations of the order governing this rank now in force or that may hereafter be enacted, or submit to the penalties therein contained." A certificate for $2,000, payable as requested, was issued upon the application. At that time there were no laws, rules or regulations of the order which confined beneficiaries to a particular class, or made the sum payable under benefit certificates dependent in anywise on the manner of death of the assured. There was also a general law of the order in force in 1878 and 1880 as follows:

"The members of the endowment rank shall consist of three classes, and be designated as first, second and third class. Any member of the endowment rank may belong to either or all of the classes if he possesses the legal qualifications, but no member can hold two memberships in the same class. One thousand dollars shall be the maximum fund in the first or in the third, and two thousand dollars shall be the maximum fund in the second class." To these three classes a fourth was subsequently added.

In pursuance of the right thus given on October 1, 1885, said Kenney tendered a surrender of his certificate which had been taken out in the second class, and applied for another in the fourth class, and, with the consent of the former beneficiary, requested permission to substitute C. H. Osborn and Mrs. Susan Calhoun as beneficiaries in the new certificate, giving as a reason for the change of beneficiaries, that he had no relatives living, and that the two persons named had nursed him when he was sick as if he had been their own son, and that for this reason the former beneficiary (section No. 60) had agreed to the substitution. The application also recited

that the change of beneficiaries was not for any pecuniary consideration, "but only for natural love and affection. As thus made the application was indorsed at a regular meeting of section No. 60, as being in accordance with the constitution of the order, and was spread upon the records of said section No. 60. The portions of the constitution thus referred to were adopted in 1884, and are to wit:

"Section 1. Every applicant for membership in the endowment rank shall designate in his application some person, or persons, related to or dependent upon him, to whom the benefit shall be paid when due, and the name, or names of the person, or persons so.designated, shall be inserted in the endowment certificate. The interest of any person so designated shall cease and determine in case of his or her death during the lifetime of such member."

"Sec. 2. A member desiring to change the name of his beneficiary, shall make a written request of the secretary of the section, upon a blank to .be furnished by the supreme secretary; a copy of such request shall be entered on the records, and the original, certified by the president and secretary under the seal of the section, shall be sent, together with the certificate originally issued, to the supreme secretary. The supreme secretary shall attach said papers to the original application of such member, enter the transaction in the book of transfers to be kept for that purpose, and shall thereupon issue to such member a new certificate containing the name or names of the substituted beneficiary or beneficiaries. But this section is subject to the proviso that no transfer shall be made for any pecuniary consideration, but only upon the consideration of natural love and affection."

Thereupon the order issued the benefit certificate, which is the basis of the present action, and which so far as material, recites to wit:

"No. 13248.                                              Fourth Class
                                                        $2,000.

"Certificate of Membership.

"Endowment Rank of the Order of Knights of Pythias.

This certifies, that brother T. E. Kenney received the endowment rank of the order of Knights of Pythias in section No. 60, on August 14, 1878, and is a member in good standing in said rank. And in consideration of the representations and declarations made in his application, bearing date of August 14, 1878, and his absolute surrender of the certificate heretofore held by him in the second class for cancellation as requested in his application for transfer to the fourth class, bearing date of October 1, 1885, all of which is made a part of this contract, and the payment of the prescribed admission fee; and in consideration of the payment and hereafter to said endowment rank of all monthly payments as required, and the full compliance with all the laws governing this rank, now in force, or that may hereafter be enacted, and shall be in good standing under said laws, the sum of two thousand dollars will be paid by the supreme lodge Knights of Pythias of the World, to H. C. Osborn and Susan Calhoun, as directed by said brother in his application, or to such other person or persons as he may subsequently direct, by change of beneficiary entered upon the records of the supreme secretary of the endowment rank; upon due notice and proof of death, and good standing in the rank at the time of death, and surrender of this certificate."

After the death of Kenney, H. C. Osborn assigned his interest in the certificate to Mrs. Susan Calhoun, whereupon she assigned a half interest to her co-plaintiff Smith. In 1894 the order adopted a law, which so far as material, is to wit:

"Each applicant for membership and each applicant for

re-admission to the endowment rank shall designate in his application some person, or persons, related to or dependent upon him for support, as hereinafter provided, to whom the benefit shall be paid when due; and the name or names, and the relationship of the person or persons so designated shall be inserted in the endowment certificate, except in case when the endowment is made payable to 'wife and children,' the names of the children may be omitted, and in the event of such member's death all surviving children of deceased shall be considered legal beneficiaries. The interest of any person so designated, or their heirs, shall cease and determine in case of his or her death during the lifetime of such member."

"If the death of any member of the endowment rank heretofore admitted into the first, second, third or fourth classes, or hereafter admitted, shall result from self-destruction, either voluntary or involuntary, whether such member shall be sane or insane at the time, or if such death shall be caused or superinduced by the use of intoxicating liquors, narcotics, opiates, or in consequence of a duel, or at the hands of justice, or in violation or attempted violation of any criminal law then in such case, the certificate issued to such member and all claim against said endowment rank on account of such membership, shall be forfeited."

This law as amended in 1896 is as follows:

"If the death of any member of the endowment rank heretofore admitted into the first, second, third or fourth classes, or hereafter admitted, shall result from suicide, either voluntary or involuntary, whether such member shall be sane or insane at the time, or if such death shall be caused or superinduced by the use of intoxicating liquors, narcotics or opiates, or in consequence of a duel or at the hands of justice, or in violation or attempted violation of any criminal law, then the amount to be paid upon such member's certificate, shall be a sum only in proportion to the whole amount as the

matured life expectancy is to the entire expectancy at date of admission to the endowment rank, the expectation of life based upon the American experience table of mortality in force at the time of such death to govern."

Kenney committed suicide on the twenty-seventh of May 1897, having paid all dues up to the date of his death, and being in good standing in the order at that time. The evidence tends to show that his mind had been impaired for several years prior to his decease. It was admitted by the parties that $1,083.19 would be the amount due on the certificate if the plan set forth in the amendment of defendant's laws in 1896 is a valid restriction upon any recovery in this action. The evidence shows that the common law of England as modified by the constitution, statutes and judicial decisions of Kansas, prevails in that state. This is a suit for the amount of the aforesaid certificate by the present holders and owners, neither of whom were related to or dependent upon said Kenney for support. The defendant relies upon the formation of the contract in the state of Kansas as exempting it from the statutes of this state abrogating the defense of suicide to suits upon policies of insurance on life, "unless it shall be shown that the insured contemplated suicide at the time he applied for the policy" (R. S. 1889, sec. 5855), and pleads its law restricting beneficiaries, in force at the time the assured changed his beneficiaries, in exclusion of any recovery by the present plaintiffs. The defendant further pleads its law limiting the amount payable upon a policy, where the assured commits suicide, in bar of any recovery beyond $1,083.19, which it avers it is ready to pay to the proper parties.

The cause was submitted to the trial judge without a jury, who made a separate finding of facts and conclusions of law in writing, and gave judgment for plaintiffs for the full amount mentioned in the certificate and interest, from which defendant appealed to this court.

The contract of insurance between the defendant and the member of its endowment rank was made and executed in the state of Kansas, where it was proven, the common law prevails without any modification as to contracts of the character in suit. The general principles of that system must therefore govern the interpretation and validity of the contract under review. Ruhe v. Buck, 124 Mo. loc. cit. 183. That parties to contracts for life insurance may stipulate that the liability of the insurer shall depend in whole or in part upon the manner of death of the assured, whether by natural causes or by self-destruction, is a rule of the common law. Haynie v. Knights Templars and Mason Indm. Co., 139 Mo. 416. This reduces the inquiry in this case to two questions: Are the present plaintiffs entitled to sue? If so, did the assured contract with the insurer that his suicide should diminish the sum payable? The first question presents no greater difficulty than a recurrence to the established facts and the laws of the order referring to the designation of beneficiaries. T. E. Kenney was a Knight of Pythias and also a member of the endowment rank or insurance branch of that order from 1878 until his death, May 27, 1897, at all times in good standing. This is shown by conclusive documentary evidence, the recitals in the two benefit certificates, the resolutions of the section (No. 60) of the endowment rank, of which he was a member, and further by the admissions of the parties in the record. Subsequent to his membership in the endowment rank but prior to the change of the beneficiaries of the fund which the order agreed to pay upon his death, defendant adopted sections one and two of its constitution of 1884. By the first section "every applicant for membership in the endowment rank" was restricted to certain persons in naming his beneficiaries. Palpably this requirement did not apply to the status of T. E. Kenney, who was then, and since 1878 had been a member of the endowment rank. The language in question did not apply

Smith v. Supreme Lodge K. of P.

to members but only to applicants for membership.   Unless
its literal sense is abandoned it could have no application to
any one who was then a member of the endowment rank.
Certainly courts, at all times abhorring forfeitures, can not be
expected to ignore the language of a provision looking to a
forfeiture and attach to it by construction an intent not mani-
fested by its words in order to work out a forfeiture.   The
foregoing language clearly excludes from the subsequent re-
quirement of the section members of the endowment rank.
Hence we can not include them without subverting maxims
of construction and justice which lie at the foundation of a
correct administration of the law.   If anything could add to
the clearness on this subject afforded by the language of the
first section of the laws of 1884, it is done by the terms of the
second section, which draws the distinction between the rule
applicable to applicants for admission to the endowment rank
and that which obtains as to members of that rank who may
desire to change their beneficiaries.   As to this, section two
provides "a member desiring to change the name of his bene-
ficiary, then sets out the method to be pursued, provides for the
surrender of his old certificate, and the obtention of a new
one, and without any restriction as to who shall constitute
the new beneficiaries, concludes with the single condition
that the substitution shall not be made for a pecuniary
consideration.   The language of these two sections put it
beyond question that the laws adopted by the defendant in
1884 were not intended nor designed to have any retroactive
effect upon the rights which had theretofore accrued to mem-
bers of its endowment rank.   It is true that the application
for a change of beneficiaries was required to be made upon a
printed blank and that the present record discloses that the
blank used by Kenney contained on its back a notification
that new beneficiaries should belong to the classes referred
to in section one of the laws of 1884; but these laws afforded

no authority or basis for this indorsement, hence it must be regarded as ill-advised and without any binding force upon the member. The foregoing analysis of the laws of the order relied on by defendant to establish its objection to the suable capacity of plaintiffs necessarily leads to an opposite conclusion. It is therefore useless to discuss the suggestion that Kenney's agreement in his original application for insurance to abide by the future laws of the order obligated him to observe those in force when he effected a change in his beneficiaries. As the laws in question neither in terms nor intendment, placed any restriction upon him in this respect, a discussion of the points suggested is wholly immaterial. Our conclusion is that the laws of the order in 1885, when Kenney substituted, one of the present plaintiffs and the assignor of the other, for his former beneficiary, did not purport to affect his action in this respect, and therefore the first question put must be answered in the affirmative, wherefore the present plaintiffs were entitled to sue upon the benefit certificate set forth in this record.

The solution of the second interrogatory propounded by this appeal depends not so much on the facts as upon the law governing the right of defendant, by virtue of an agreement in the application for insurance to abide the results of future by-laws, to enact subsequent rules which should affect the rights of the member as they attached at the time he took out a benefit certificate on his life. The general rule on this subject is not better stated anywhere than by a modern text-writer, to wit: "Even though a certificate of membership in a mutual benefit society contains upon its face the explicit statement that the contract of insurance evidenced thereby is subject to its by-laws and to any amendments thereto which may thereafter be made, it is subject to the implied condition that any subsequent amendment shall be reasonable; and any amendment which entirely changes the scheme of insurance

and makes a radical departure from the fundamental plan, is not a reasonable exercise of the reserved power of amendment. An amendment designed to perfect, in matter of form and detail, the original plan, will, if otherwise unobjectionable, be within the terms of the contract, but one calculated to defeat or destroy that plan, or to substitute for it some other and essentially different scheme, will be an abuse of the power, a violation of the contract, and an unreasonable and invalid amendment." Niblack on Benefit Societies (2 Ed.) p. 58, sec. 25. In the case at bar the application for insurance made by Kenney in 1878 contained a clause binding him to conform to and obey the future laws of the order, and the benefit certificate issued upon this application recited such agreement as one of its considerations, as did also the benefit certificate which was issued in 1885 upon the change of beneficiaries. In 1894 the order enacted a law forfeiting absolutely the insurance of any person "heretofore" or "hereafter" admitted to the endowment rank who should commit self-destruction. In 1896 the order amended this provision by providing that in case of death by suicide, either voluntary or involuntary, sane or insane, its liability should be proportioned to the ratio between his matured life expectancy and the entire life expectancy of the member at the date of his insurance. In May, 1897, Kenney, according to the finding of the trier of the fact, took his life in a fit of insanity. These facts show that the member, when insured, agreed to abide by the future laws of the order; that the particular law relied upon by defendant to reduce its liability purported on its face to act retrospectively, and that the death of the member happened in the manner specified in the by-law for the partial release. It follows under the rule above quoted that if the law in question was only a reasonable one, then it became a part of and was included in the original contract between the parties, and is therefore a valid restriction upon plaintiff's right to

recover in this action. Upon the single question as to the nature of this by-law this case must turn. When the defendant insured the life of this member in 1878 the contingency of his death as it afterwards happened was one of the risks assumed, for which the dues then paid, and also those subsequently received for 18 years, constituted the consideration. If Kenney had died previously to the adoption of either of the by-laws against suicide no question as to the quantum of the liability of the defendant could have arisen, for defendant would have been obliged by its express agreement to pay the full sum specified in the benefit certificate. In this full sum it acknowledged itself to be indebted when it issued the benefit certificate. The fact that it reserved the right, by the assent of the member, to make future laws obligatory upon him, could not justly be deemed to comprehend the right to abate its debt, for that would *pro tanto* destroy the contract between the parties, and to permit one person to accept the consideration of a debt and subsequently to deny a material part or all of such debt, would authorize a patent fraud, which the law does not deem to have been within the intent of a mere general agreement for changes in the contract. Such an agreement only contemplates those changes which fairly consist with the full obligation entered into. It does not imply that the obligation itself should be lessened or destroyed at the will or caprice of the obligor, for that would involve injustice to one and ill-design on the part of the other of two parties to a contract. The law does not seek to compass an injury; neither does it impute an intent to defraud in advance of proof. In associations like the present which are professedly formed to provide a sum certain to a designated recipient, the parties are not to be understood as intending by an agreement on the part of the assured to obey future laws, that the indemnity specified shall be materially impaired or destroyed, after full consideration paid, under the operation of a subsequent

·by-law which, like the one under review, provides for a
forfeiture of material rights upon an event which the member,
according to this record, could not avoid, death by self-destruc-
tion when insane. Of course, such a clause if it had been
inserted in the original contract might have been
available in some jurisdictions, not to defendant, however, in
contracts made in this state. Toomey v. Supreme Lodge K.
of P., 147 Mo. 129; s. c., 74 Mo. App. 507. That would
present a very different question from the one before us:
What we have to deal with is, not the enforcibility of such
a clause if embraced in the original agreement between the
parties (as in the Toomey case, *supra*), but its injection into
their contract per force of an agreement to abide future by-
laws. If it is thus read into the contract between the parties
it necessarily affects its substance and the extent of the right
to recover thereon, and is therefore a material alteration of an
agreement fairly entered into and upon a full consideration.
We can not infer that this was the result had in view when
the contract was made as shown in this record, nor do we think
it would be a reasonable exercise of the right reserved to the
order to make by-laws for the future goverhance of its mem-
ber, to enact one which in effect took away about one-half of
the sum it had agreed to pay him, after having received the
consideration for the indemnity for 18 years. There are
some intimations of a different tenor in other states (71 Ala.
436; 75 Miss. 466), but the rulings in this state have been
entirely harmonious with the views herein expressed. The
legislature of this state has expressed the same conclusion as to
the unreasonableness of suicide as a defense to a policy of
insurance, although a clause to that effect is inserted in the
policy itself. This court has directly held that a contract of
insurance can not be materially modified or changed without
the express consent of the member. Grand Lodge A. O. U. W.
v. Sater, 44 Mo. App., loc. cit. 452-453; see, also, Sterling

v. Royal Templars, 108 Mich. 440; Becker v. Benefit Society, 144 Pa. St. 232. Our conclusion is that the by-law pleaded by defendant in reduction of its liability was not within the legal purview of the agreement made by the assured when he obtained his insurance, and not having been expressly assented to by him, was therefore invalid and is inoperative against the present plaintiffs, the judgment in whose favor is hereby affirmed. All concur.