SCHMIDT, Jr., et al., Appellants, v. UNITED ORDER OF FORESTERS, Respondent.

St. Louis Court of Appeals, April 2, 1907.

1. **FRATERNAL BENEFICIARY SOCIETIES: Suicide: Insurance Society Not Authorized to do Business in This State.** An application for insurance in a fraternal beneficiary society, which had not been authorized to do business in this State, provided that if the applicant died by suicide no indemnity should be paid and that he should be governed by the by-laws then in force or thereafter enacted, limiting the rights of his beneficiary, and where the by-laws at the time of the application and until the time of his death provided that suicide should avoid the contract, and after the benefit certificate was issued the society complied with the law authorizing it to do business in this State; that the insured committed suicide was a good defense to an action on the policy.

2. ———: ———: ———. Where the application for insurance and the by-laws of the society in such case showed it to be a fraternal beneficiary society; it was entitled to the immunity from the provisions of section 7896 relating to suicide conferred upon fraternal societies by section 7913, Revised Statutes of 1899.

3. ———: ———: **Future Change of By-Laws.** The rule that a beneficiary order can not, by a by-law enacted subsequent to the application, take away part of the benefit provided for in the beneficiary certificate, does not apply in such case, although such by-laws were inoperative at the time the application was presented, they became active on the subsequent compliance by the society with the law authorizing it to do business in this State, and the intention of the insured was that he should be bound by such by-laws.

Appeal from St. Louis City Circuit Court.—*Hon. O'Neill Ryan*, Judge.

AFFIRMED.

*F. A. Wislizenus* and *W. F. Heideman* for appellants.

(1) The insurance contract of a fraternal society which has not qualified under section 1410, Revised Statutes 1899, is governed by the insurance laws of our State. Provisions in such insurance contracts which deny liability in case of suicide of the insured are void under section 7896, unless suicide was contemplated at application (which is out of this case). Provisions avoiding the insurance on account of false representations are also void under section 7890, unless they contribute to the loss (which is also out of this case). Brassfield v. Knights, 92 Mo. App. 102; Toomey v. Supreme Lodge, 74 Mo. App. 507, 147 Mo. 129; Brassfield v. Modern Woodmen, 88 Mo. App. 210; Kern v. Legion of Honor, 167 Mo. 471. (2) Provisions in the insurance contract of a fraternal society looking to the alteration of the contract by the society should be construed as referring merely to administrative and regulative enactments; not as going to the reduction or withdrawal of the consideration for which assessments are charged. Smith v. Supreme Lodge, 83 Mo. App. 512; Campbell v. American Benefit Club, 100 Mo. App. 249; Sisson v. Supreme Court, 104 Mo. App. 54. (3) Even though such fraternal society have the right to modify the contact in a way substantially reducing its liability, any act on its part offered as exercise of that power must be shown to be retroactive beyond doubt; or else it will be held not to apply to contracts preceding such act. Morton v. Supreme Council, 100 Mo. App. 90. (4) Specifically is it true that a foreign fraternal society which puts itself under the provisions of the laws of Missouri relating to such organizations, does not by that mere act change its insurance contracts entered into prior thereto. Huff v. Woodmen, 85 Mo. App. 102.

*Douglas W. Robert* for respondent.

(1) The contract, i. e., the application, the certificate and the by-laws having provided that the respondent would not pay in the event of the suicide of the insured, the respondent having complied with the laws of this State relating to fraternal associations, was entitled to immunity from the general insurance laws and to rely on suicide and breach of warranty as defenses. R. S. 1899, secs. 1408-9-10; Hudnall v. Modern Woodmen, 103 Mo. App. 356; Richmond v. Supreme Lodge, 100 Mo. App. 8; Shotliff v. Modern Woodmen, 100 Mo. App. 636; McDermott v. Same, 97 Mo. App. 636; Morton v. Royal Tribe, 93 Mo. App. 78. (2) There is a broad distinction between those cases which hold that a fraternal association may not change its by-laws so as to affect the contract even though the assured has agreed to be bound by or to abide by future changes, and those which hold that when the insured agrees that the laws of the order in force at the time of his death shall determine the rights of the beneficiaries, or the validity of the certificate. Richmond v. Supreme Lodge, 100 Mo. App. 8; Morton v. Supreme Council, 100 Mo. App. 94; Toomey v. Supreme Lodge, 74 Mo. App. 517. (3) No rights accrue in a fraternal beneficiary certificate until after the death of the member. Legion of Honor v. Niedlet, 81 Mo. App. 598; Masonic Ben. Assn. v. Bunch, 109 Mo. 579.

GOODE, J.—Appellants are the half-brothers and half-sisters of Charles Fosz, deceased, and claim to be beneficiaries in a certificate of insurance for one thousand dollars issued by respondent company to Fosz on November 15, 1901. The insured killed himself May 15, 1903. Wilhelmine Schmidt, the mother of Fosz, was designated in the certificate as beneficiary, but she died before her son and as he designated no other beneficiary, appellants demand the insurance under a by-law of the

Order providing for the payment of the amount of the certificate to the brothers and sisters of the insured in a given contingency. Such contingency was presented in the present instance on the death of the mother of Fosz, and his failure to appoint another beneficiary. Two defenses are raised against the action. First, a false warranty by Fosz in his application for insurance in the statement that he had no brothers or sisters. Second, that Fosz committed suicide, while his application and the by-laws of the Order, both of which were part of the contract between him and the company, provided the contract should be void if the insured took his own life. The discussion on the appeal is principally of the defense of suicide, and that is the only one we will notice as our conclusion regarding it disposes of the case. It is admitted Fosz died by his own hand, and that if the respondent company, prior to the date of the certificate, had complied with the laws of Missouri, authorizing a foreign fraternal association to do business as such in this State, the defense of suicide would present an insuperable obstacle to recovery. But respondent was incorporated under the laws of Wisconsin and never complied with the laws of Missouri authorizing it to do business therein as a fraternal society unil January 6, 1902, or about two months after the contract in question was made. Hence appellants insist that at the date of the contract, respondent's position in this State was that of an ordinary old-line insurance company, and, therefore the contract was controlled by section 7896 of the Revised Statutes of 1899, which provides that the suicide of an insured person shall be no defense in an action on a policy unless it is shown the insured contemplated suicide at the time he applied for insurance. Respondent insists, on the contrary, that as it had complied with the laws of Missouri prior to the death of Fosz, it was entitled to the immunity from the statutes regulating ordinary insurance companies conferred by

section 7913 of the Revised Statutes of 1899 on such societies. The application for insurance signed by Fosz made the statements and stipulations contained therein warranties and also made them a part of the contract of insurance. One of the stipulations was that if his death ensued by reason of suicide or self-destruction, voluntary or involuntary, no indemnity should be due his beneficiary. Other stipulations were:

"7. That the laws of the society in force on the date of my death, shall determine the right of my beneficiary or beneficiaries, and that this application and all rights and privileges accruing to me or my beneficiary or beneficiaries thereunder, shall be limited by and subject to all laws, rules and regulations which are now in force, or which may hereafter be enacted by the United Order of Foresters.

"10. That in case of the suit for a death benefit by my beneficiary or beneficiaries, against the society, that that burden shall rest upon such beneficiary or beneficiaries to prove my application, membership and the constitution and laws in force at the time of my death, as well as the furnishing of due notice of and proof of death."

A by-law of the Order in force when the certificate was issued, provided as follows:

"Law 62, section 9. The United Order of Foresters does not insure against suicide nor against self-destruction and if any member shall commit suicide or self-destruction, or shall be the means in any manner of taking his own life, he shall, by such act, forfeit his certificate of membership, together with all rights and benefits due him or his beneficiary or beneficiaries from the Supreme Court or High Court or a Subordinate Court."

No change was made in the by-laws of the Society, after the date of Fosz' certificate, attempting to alter the contract between Fosz and the Society or impair its obligation. Not only did the insured expressly agree

in his application, that if he died by suicide no indemnity should be paid; but expressly agreed in the same document that all by-laws, rules and regulations of the Order in force at the date of his death, should limit the rights of his beneficiary. A by-law against suicide was then in force. It may not have been in force in Missouri so as to affect a contract written therein, because of a statute of the State limiting the defense of a suicide in actions on insurance contracts. Nevertheless it was in full force as a by-law of the Order. If it was ineffective in Missouri at the date of the contract by reason of defendant not having yet complied with the statute authorizing foreign fraternal societies to do business here, it became effective upon compliance with the statute. This is not the case of an attempt to impair the obligation of a contract by a by-law enacted after its date. But it is argued that when Fosz took out the insurance, he got an old line policy and one controlled by all the statutes affecting that kind of insurance; that the society could write no other kind in this State; and that the statutes made suicide no defense to an action on an old line contract unless suicide was intended when the policy was applied for, and this statute became a part of the contract. Probably the statutes so far controlled the rights of the parties that, if the defendant company had not qualified itself to do business in Missouri as a beneficiary society before Fosz died, it could not have maintained the defense of suicide except on proof that Fosz contemplated taking his own life from the first. But it is apparent that the defendant order was neither an old line insurance company nor holding itself out as writing old line contracts. Its policies may have been for regular life insurance *sub modo*, that is, to a limited extent; but they were not such in a genuine sense, and as expressive of the intention of either itself or the other parties to its contracts; for a man who asked for insurance under the conditions expressed in Fosz's application and got

it according to the terms expressed in his certificate, could not have understood he was getting, or paying for, regular life insurance. If he desired that sort he would never have accepted a policy containing the terms of the present certificate. It is perfectly plain that Fosz wanted fraternal insurance and believed what he got was that kind and subject to the conditions imposed by the by-laws regarding suicide and other matters. In Westerman v. Knights of Pythias, 196 Mo. 670, the question at issue was in effect determined. In that case the contract of insurance was written at a time when there was no law authorizing foreign fraternal societies to do business as such in this State. Afterwards the law of 1897, providing that they might transact business here on certain conditions, was enacted and the Knights of Pythias complied with the law. The point for decision was whether the contract of insurance in that case had lapsed for failure to pay premiums, or whether it was kept alive by virtue of the statute of the State (R. S. 1899, sec. 7898) providing against the forfeiture of regular policies on which three annual premiums had been paid. To dispose of this question it was necessary to determine whether the Westerman contract was originally for old line insurance in the sense that it was entitled to all the prerogatives pertaining to such policies despite the enactment of the statute of 1897, allowing fraternal societies to do business in Missouri, and compliance with said statute by the Order Knights of Pythias. The reasoning of the court is that the Knights of Pythias was, in fact, a fraternal association and that Westerman had contracted with it as such; that he could have changed his beneficiary at any time and any designated beneficiary had no vested rights under the contract to be impaired by the act of 1897; that Westerman had agreed in his application for the control of his contract by all laws then in force or which might thereafter be enacted by the Supreme Lodge; and had continued to

pay dues after the Order had complied witth the law of 1897. That decision seems to cover the case at bar, and to compel the ruling that the by-law against suicide in existence when Fosz took out his insurance and still in existence when he died, determined the rights of his beneficiary; as meanwhile the defendant, by complying with the statute of 1897, had become entitled to do business as a fraternal society in this State and to enjoy immunity from some of the statutes governing old line insurance. This court has adhered to the doctrine that a mere proviso in an application for fraternal insurance or in a certificate, that the member would comply with future by-laws, does not authorize the Order to take away by a subsequent by-law, part of the indemnity provided for in the certificate. [Smith v. Knights of Pythias, 83 Mo. App. 512.] This is on the ground that it cannot reasonably be supposed, unless so stated or clearly implied, that either the member or the company intended to provide for the enactment of a by-law which would destroy the substantial rights created by the contract of insurance. But that is a very different proposition from the saying that a by-law exonerating the society from liability in a certain contingency, but inactive when the insurance is written on account of the society not having qualified itself to write fraternal insurance, must remain always inactive even though, before a loss occurs, the society does qualify itself. In the latter case the intention of the insured to be governed by the by-law in existence when he took his certificate is apparent; whereas in the former his intention to allow his contract to be materially impaired by a by-law subsequently enacted, depends on the language of his application or certificate; and an interpretation which would forfeit any of his rights ought not to be given unless the language is not fairly susceptible of one favorable to him.

Though this case had received prolonged attention

before the foregoing portion of the opinion was written, we have again gone over the Westerman case and others which may be considered relevant, to ascertain if they conflict with our conclusion. The point in judgment in the Westerman case and the general purport of the opinion are clear; but in the latter portion of the opinion (loc. cit. 740, et seq.) there is an intimation that the statute providing that suicde will be no defense to an action on a policy unless contemplated when. the policy was applied for, might be applicable to the contract of a foreign fraternal society written prior to the act of 1897, if the society complies with the act after the contract is executed. It is true the opinion does not say as much, but neither does it directly speak to the contrary. The remarks are made in an attempt to distinguish the Westerman decision from the decisions in Toomey v. Knights of Pythias, 147 Mo. 129, 48 S. W. 936, and Kern v. Legion of Honor, 167 Mo. 471, 67 S. W. 252. In those cases the certificates were issued and the persons insured died prior to the enactment of the statute of 1897 and while there was no law permitting a foreign fraternal insurance company to do business in this State; therefore they did not involve the point in question. But in holding that the beneficiary in the Westerman certificates had no vested interest in them, the Supreme Court determined that those certificates were not old line insurance; for the very essence of the distinction between old line insurance and fraternal is that in the former the contract vests an interest in the beneficiary, whereas in the latter it does not. [Masonic Benefit Assn. v. Bunch, 109 Mo. 560, 579, 19 S. W. 25.] And in determining that the nonforfeiture statute did not apply to the contract of a foreign fraternal society written before the act of 1897, if the society subsequently complied with the act, the principle on which the decision of this case must turn, was prescribed, to-wit: that though the foreign so-

ciety may have been doing business in Missouri without authority, either because there was no statute allowing it to do business here, or, if there was, because it had not complied with such statute, yet, nevertheless its contracts are so far of the fraternal character that subsequent compliance with the statutes enabling foreign societies to operate in Missouri, will afford the contract exemption from statutes regulating the contracts of ordinary life insurance companies. The effect of the decisions on this subject is not that either the suicide or the nonforfeiture statute is part of the contract of insurance written by a foreign fraternal society, which is not authorized to do business in this State. If those statutes were part of the contract they would remain so despite occurrences *ex post facto;* they could not be impaired by the company's subsequent compliance. But the cases, instead of regarding those statutes as parts of the contract, appear to do no more than withhold from the societies as long as they are unlicensed, the right to plead suicide as a defense or claim a forfeiture for nonpayment of dues. This is the effect of the decisions in Morton v. Royal Tribe of Joseph, 93 Mo. App. 78, and of the Westerman case, which approves the opinion in the Morton case. It is worthy of note that Fosz paid premiums on his certificate and remained a member of the Order long after it was licensed to do business in this State; a fact which might be of weight on the question of whether or not he consented to the by-law against suicide being applicable to his certificate. Our conclusion is in conflict with that of the Kansas City Court of Appeals in Huff v. Woodman, 85 Mo. App. 96, a cause disposed of prior to the decision of the Westerman case. In order that this matter may be cleared up so there will be no uncertainty about the law, we certify this cause to the Supreme Court for decision as we deem our decision in conflict with that given by the Kansas City Court of Appeals in the case just cited.

The judgment in the present case is affirmed.    All concur.