Morton v. Royal Tribe of Joseph.

HATTIE C. MORTON et al., Appellants, v. ROYAL TRIBE OF JOSEPH, Respondent.

St. Louis Court of Appeals, March 1, 1902.

1. **Fraternal Beneficiary Societies:** MORTUARY FUND, HOW RAISED: STATUTORY CONSTRUCTION. From sections 1408 and 1411, Revised Statutes 1899, it is apparent that the Legislature intended that fraternal beneficiary associations should not be restricted to the assessment plan for the purpose of raising funds to pay death losses, but that they might raise funds by requiring the members to pay periodical dues to be fixed with reference to the age of the member and the amount of his insurance certificate, and that it is competent for the association to raise the mortuary fund by dues or by assessment or by both methods.

2. ———: ———: ———.   In the case at bar, the purpose of the defendant, as evidenced by its by-laws and constitution, is to pay each of its certificates of insurance in full on the death of a member.   To accomplish this purpose it adopted the fixed monthly dues from each member at a rate which seems so far to meet the death losses that have accrued and has not created any surplus.   Should the losses exceed the income from dues the power conferred by by-law No. 132, may be applied and additional installments of dues be collected and finally the reserve fund may be drawn upon to pay death losses.

Morton v. Royal Tribe of Joseph.

3. ———: ———: ———: CERTIFICATE OF INSURANCE IN FRATERNAL BENEFICIARY ASSOCIATION, NOT OLD LINE INSURANCE CERTIFICATE. And these benefit certificates are not policies of insurance of the old-line type, and the monthly dues are not paid as so much insurance contracted to be paid at the death of the insured from which dues it is expected by both parties that the insurance company will derive a profit.

4. ———: ———. As the certificates are not issued with a view that the association may make a profit thereby but for the purpose of securing mutual protection instead of profit to the association; and herein again is the insurance widely distinguishable from the premium plan for a profit.

5. ———: SUICIDE, DEFENSE TO ACTION ON CERTIFICATE IN FRATERNAL BENEFICIARY CERTIFICATE. In the case at bar, as the defendant mutual beneficiary society, comes within the purview of the Act of 1897, relating thereto, suicide of the member was a valid and complete defense to the action of the beneficiary.

6. ———: CERTIFICATE OF INSURANCE, WHEN INTEREST IS VESTED. In the case at bar, neither the number nor the beneficiary had any vested interest in the certificate of insurance prior to the death of the member.

Appeal from Cape Girardeau Circuit Court.—*Hon. Henry C. Riley,* Judge.

AFFIRMED.

*H. L. Albert* and *Frank E. Burrough* for appellants.

(1) This case turns upon the terms and character of the contract, which the court erroneously submitted to the jury. Contracts must be construed by the court. Gas Light Co. v. Ins. Co., 33 Mo. App. 348. (2) Suicide is no defense to a straight, life policy. R. S. 1899, sec. 7896. (3) Suicide is no defense to an assessment policy, since the amendment of 1897, page 129. Logan v. Fidelity Co., 146 Mo. 114; Toomey v. K. P., 147 Mo. 129. (4) Prior to that amendment, suicide was a defense to a mutual assessment policy. Wallace v. Bankers, 80 Mo. App. 102; Haynie v. Knights Templars,

139 Mo. 416. (5) In the Handford case, 122 Mo. 50, it was clearly a mutual assessment company, because the rates could be raised. (6) Prior to the Act of 1897, this company was clearly not a benefit society. Toomey v. K. P., 74 Mo. App. 507; K. P. v. Kaliniski, 163 U. S. 294; National Union v. Morrow, 74 Fed. 775; Jacobs v. Life Association, 146 Mo. 523; Toomey v. K. P., 147 Mo. 129. (7) A fraternal benefit case is Brower v. Nat. Reserve, 74 Mo. App. 490. (8) The character of the company is not fixed by its name, rites, ceremonies, jewels and paraphernalia, but by terms of the contract. Toomey v. K. P., 147 Mo. 129. (9) The levying of an additional number of assessments, upon a remote contingency which has never happened and no one expects to happen, can not convert a straight life to an assessment policy. Jacobs v. Life Association, 146 Mo. 539.

*Harry B. Walker* and *W. H. Miller* for respondent.

(1) The court correctly refused instruction No. 1 asked by plaintiffs. R. S. 1899, sec. 1408; Jacobs v. Life Ass'n, 142 Mo. 60; Wallace v. Life Ass'n, 80 Mo. App. 105. (2) Both benefit certificates made the by-laws of the R. T. of J. a part of the contract. So likewise did they make sections 112 and 233 of the by-laws. Under such contract suicide is complete defense. R. S. 1889, secs. 2823 and 2824; R. S. 1899, sec. 1408 (Session Acts 1897). (3) The respondent is not an assessment company, but if it were, suicide would be a defense. Wallace v. Life Ass'n, 80 Mo. App. 102; Collins v. Mut. Life Ass'n, 85 Mo. App. 242. (4) Sections 5849, 5850, R. S. 1889 (sec. 7896, R. S. 1899) do not apply to fraternal benefit associations. Whitman v. Sup. Lodge, 100 Mo. 36; Masonic Benevolent Ass'n v. Bunch, 109 Mo. 560; Theobald v. Sup. Lodge, 59 Mo. App. 87; Hanford v. Benefit Ass'n, 122 Mo. 50; Sparks v. Knight Templars, 61 Mo. App. 109. (5) Defendant's instruction No. 4 was properly given by the

court. The instruction followed almost verbatim section 1408, Revised Statutes 1899. Whether or not the respondent was a fraternal benefit society was a question of fact for the jury. R. S. 1899, sec. 1408; Jacobs v. Life Ass'n, 142 Mo. 49.

BLAND, P. J.—The petition alleges that the defendant is a corporation, incorporated under the laws of this State, doing business as an insurance company. The petition is in two counts. The first is to recover on the following certificate of insurance:

"Number 3970C, Division C. Amount $1,000. Royal Tribe of Joseph, Sedalia, Missouri, U. S. of America. This certifies that Ralph Waldo Morton is a member of Shawnee Lodge, Number 33, and that in accordance with and under the provisions of the laws of this society he is entitled to all the rights, benefits and privileges of membership therein, and that upon receipt by the supreme lodge of satisfactory proof of his death together with the surrender of this certificate, the sum of one thousand dollars will be paid out of Division C of the benefit fund of the Royal Tribe of Joseph to Hattie C. Morton, his wife, Ralph W. and Helen A. Morton, his children, upon condition that the statements made by him in his application for membership and the statements certified by him to the medical examiner be made a part of this contract.

"This certificate is issued to and accepted by the member upon the terms and conditions set forth in the by-laws of this society now in force or which may hereafter be adopted, and which are made a part hereof.

"In witness whereof, the supreme patriarch and supreme scribe of this society have hereto subscribed their names and affixed the corporate seal of the society at Sedalia, Missouri, this fifth day of May, 1896.

(Seal) "PHIL. E. CHAPPELL, Supreme Patriarch.
"E. C. MASON, Supreme Scribe."

Vol 93, app—6.

And the second is to recover on the following other certificate:

"Number 8050. 'Ideal' Division. Amount $2,000. Royal Tribe of Joseph, Sedalia, Missouri, U. S. of America. Issued in lieu of No. 1829A. This certifies that Ralph W. Morton is a member of Shawnee Lodge, No. 33, and that he is entitled to all the rights, benefits and privileges of membership therein, and that upon receipt by the supreme lodge of satisfactory proof of his death, together with the surrender of this certificate, the sum of two thousand dollars will be paid out of the 'Ideal' division of the mortuary fund of the Royal Tribe of Joseph to Hattie C. Morton, wife, and Ralph W. and Helen A. Morton, children, upon condition that the payment of all benefits under this certificate shall be governed by the provisions of the laws pertaining to this class of certificates, which provisions, together with the statements made by him in his application for membership, and the statements certified by him to the medical examiner, be made a part of this contract.

"This certificate is issued to and accepted by the member upon the terms and conditions set forth in the laws of this society now in force or which may hereafter be adopted, and which are made a part hereof.

"In witness whereof, the supreme patriarch and supreme scribe of this society have hereto subscribed their names and affixed the corporate seal of the society at Sedalia, Missouri, this first day of February, 1898.

(Seal)    "PHIL. E. CHAPPELL, Supreme Patriarch.
"J. E. RITCHEY, Supreme Scribe."

The answer is, in substance, that defendant is a fraternal beneficiary organization; that it issued certificates of insurance under the provisions of the Act of 1897 (Laws 1897, p. 132); that its constitution and by-laws are made a part of the contract of insurance in the two certificates sued on; that by section 233, of the constitution and by-laws, it is provided that no lia-

bility should accrue on either of the certificates of insurance if the insured should die by his own hand, sane or insane, and that Ralph W. Morton, the insured, died by his own hand.

In respect to the certificate of insurance in the "Ideal" division of the mortuary fund, the answer alleged that under the by-laws if a member holding a certificate died within five years of the date of the issuance of the certificate, his beneficiary should receive the face value of the certificate less twenty-five per cent thereof; that Ralph W. Morton died within five years of the date of the certificate, and that in no event was the defendant liable on the certificate for more than fifteen hundred dollars; and denied the other allegations of the petition.

It is conceded that Morton had paid all of his dues up to the date of his death and that he was in good standing with the order.

Plaintiff read in evidence the two certificates of insurance and parts of the constitution and certain by-laws of the defendant, from which it apears that the defendant is a fraternal beneficiary association; that it has a lodge system, a ritualistic form of work and a representative form of government, and is authorized by its charter to institute lodges througho ' the United States and Canada; that it has grand lodges and a supreme lodge; that the latter meets once in two years; that its insurance business is managed by its supreme officers; that the ordinary expenses of the organization are paid from lodge dues, grand lodge dues and fees for installing new lodges; that its funds to meet losses arising from the death of members holding certificates in division "C" are raised under the provisions of the following by-law:

"Sec. 115. Monthly payments. All installments on benefit certificates in this society shall be payable monthly without notice. The rate of payment on certificates shall not be increased, but shall remain the same as at age of entry, and all members holding certificates shall pay installments monthly at the rate indicated by the following table:

Morton v. Royal Tribe of Joseph.

"Sec. 116.    "Ideal" Certificate.    Rates per $1,000.

| Age | Rate of Payment | Annual Cost 12 Payments | Age | Rate of Payment | Annual Cost 12 Payments |
|---|---|---|---|---|---|
| 18–24 | .40 | $4.80 | 46–47 | $ .85 | $10.20 |
| 25–27 | .45 | 5.40 | 48 | .90 | 10.80 |
| 28–30 | .50 | 6.00 | 49 | .95 | 11.40 |
| 31–33 | .55 | 6.60 | 50 | 1.00 | 12.00 |
| 34–36 | .60 | 7.20 | 51 | 1.05 | 12.60 |
| 37–39 | .65 | . 7.80 | 52 | 1.10 | 13.20 |
| 40–41 | .70 | 8.40 | 53 | 1.15 | 13.80 |
| 42–43 | .75 | 9.00 | 54 | 1.20 | 14.40 |
| 44–45 | .80 | 9.60 | 55 | 1.25 | 15.00 |

The monthly dues for "Ideal" certificates are at the same rate per thousand of insurance as in division "C".

In respect to the "Ideal" certificate, the by-laws provided as follows:

"Sec. 117.    The 'Ideal' Certificate.    All members holding certificates of this class shall be entitled to the following benefits, subject to the conditions hereinafter provided.

"Sec. 118.    Death Benefits.    In the event of the death of a member within five years from the date of issue of his certificate, his beneficiaries shall receive the face value of his certificate, less twenty-five per cent of the same, but if death does not occur until after five years from the date of his certificate, his beneficiaries shall receive in full the face value of his certificate.

"Sec. 119.    Disability Benefit.    If any member who has held an Ideal benefit certificate in this society for one year shall thereafter become permanently disabled, one-half of the amount thereof shall thereby become payable to him upon the delivery of his certificate to the supreme scribe for cancellation, and such amount shall be paid in ten annual installments, the first one of which shall be due and payable when proper proof of such permanent disability, as required by the supreme medical examiner and the supreme executive council shall have

been furnished by such member, and one shall become due each year thereafter until the ten installments shall have been paid. In case such permanently disabled member dies before such installments shall have been fully paid to him as aforesaid, then the installments remaining unpaid shall be paid annually to such beneficiary under his certificate as he may designate."

In addition to these sections, section 120 of the by-laws makes provision for accident benefits, and section 121 for old age benefits for those holding certificates in the "Ideal" division. This class of certificates is limited to persons between the ages of eighteen and fifty-five, and in amount of insurance from five hundred to two thousand dollars. Section 155 provides for a reserve fund in the "Ideal" division, to consist of all amounts deducted in the settlement of death claims under certificates in this class as provided in section 118 of the by-laws, and interest dividends or other profits arising from the investment of these funds. Applicable to both classes of certificates, additional installments of dues are provided for by section 132 of the by-laws, which reads as follows:

"Sec. 132.    Benefit Installments.    The rate of benefit installments shall not be increased above the established rate as provided in section 116.    The number of installments required shall not be more than one in each month unless the mortuary fund be insufficient to pay all claims, in which case such additional installments shall be called as may be necessary, up to the number of 18, after which the remaining unpaid claims, if any, shall be paid out of the reserve fund.    And should such contingency arise, the supreme trustees may call additional installments to reimburse the reserve fund for the amount so expended."

On the death of a beneficiary member in good standing, section 127 of the general laws of the order makes it the duty of the lodge of which the deceased was a member, to notify the supreme executive council of such death, giving particulars. After receiving the notice it is made the duty of the supreme

executive council, when satisfied of the validity of the claims of the beneficiary under the laws of the society, to cause a warrant to be drawn on the treasurer within ninety days in favor of the person or persons named in the benefit certificate, or entitled to the benefit, for the amount due on account of the death and to forward the warrant to the treasurer of the lodge of which the deceased was a member. It is made the duty of the treasurer of the lodge, on receipt of the warrant, to immediately deliver it to the person or persons in whose favor it is drawn and to receive in return the benefit certificate properly indorsed.

For the purpose of the appeal appellant admits that Ralph W. Morton, the insured, committed suicide in the Terminal Hotel, in the city of St. Louis, on the second day of March, 1899. Morton was in good standing with the order and had paid all of his monthly dues up to the date of his death. Proofs of his death were duly made out and furnished the defendant.

The only controversy on this appeal is as to the liability of defendant in view of the fact that the insured died by his own hand. The trial court substantially instructed the jury to find for the defendant if they found that Ralph W. Morton committed suicide. The jury, in obedience to the instructions, returned a verdict for the defendant.

Plaintiff's contention is that the insurance business of defendant is not conducted on the assessment plan but on the premium plan, and being so conducted the defendant is subject to the laws applicable to the old line insurance companies. As to these, suicide is no defense (section 7896, R. S. 1899).

Defendant read in evidence a proclamation issued by the supreme patriarch of the order promulgating that the constitution and by-laws have been amended at the March session, 1898, of the supreme lodge and that the same were in force from and after March 15, 1898. Also the certificate of the insurance department showing the organization of the company

under the laws of the State, and a certificate of authority issued annually by E. T. O'Rear, state superintendent of insurance, and a statement of the condition of the insurance department of the order for the year ending December 31, 1899, showing a total membership of four thousand six hundred and sixty-eight; protection in force, seven million two hundred and sixty-nine dollars; receipts for the year, sixty-two thousand eight hundred and sixty-seven dollars and fifty-five cents; death claims paid, twenty-four thousand seven hundred and fifty dollars; for accident claims, five hundred and fifty dollars, and for total disability claims, one hundred and twenty-five dollars; amount expended for all other expenses, fifteen thousand two hundred and forty-nine dollars and eighty-two cents, leaving a balance to the credit of the association of twenty-two thousand one hundred and ninety-two dollars and seventy-three cents. Twenty thousand five hundred dollars of this balance was invested to the credit of the reserve fund. The report also showed five thousand five hundred dollars of claims approved but not due.

The funds for paying death losses are not raised by the assessment plan but by monthly dues payable according to sections 115 and 116 of the by-laws, supra. The rate of payment of these dues is graded according to the age of the member at the date of the issuance of his certificate and the amount of the insurance for which it is issued, and is unchangeable. This table of rates is not distinguishable (except as to the cost of insurance) from the usual table of rates of insurance furnished by the old line companies. But the table of rates fixed by the defendant is not called a table of premiums, nor are the monthly payments made by the members paid with the understanding that they are paying premiums for insurance, but that the payments are made to keep up a mortuary fund for the sole purpose of paying a benefit to the beneficiaries named in the certificates of the members whenever death shall remove one of them from the order. These payments are not made that the

order may profit thereby, nor does it derive any profit there-from, and herein is the table of rates radically different from rates charged by old line companies.

The defendant revised its constitution and by-laws in 1898 for the purpose of availing itself of the provisions of the law of 1897 in respect to fraternal beneficiary associations and is doing business under that law and must be governed by its provisions.     Section 1 of the act (now section 1408, R. S. 1899) is as follows:

"A fraternal beneficiary association is hereby declared to be a corporation, society or voluntary association, formed or organized and carried on for the sole benefit of its members and their beneficiaries, and not for profit.     Each association shall have a lodge system, with ritualistic form of work and representative form of government, and shall make provision for the payment of benefits in case of death, and may make provision for the payment of benefits in case of sickness, temporary or permanent physical disability, either as the result of disease, accident or old age, provided the period in life at which payment of physical disability benefits on account of old age commences, shall not be under seventy years, subject to the compliance with its constitution and laws.     The fund from which the payment of such benefits shall be made, and the fund from which the expenses of such association shall be defrayed, shall be derived from assessments or dues collected from its members. Payments of death benefits shall be to the families, heirs, blood relatives, affianced husband or affianced wife of, or to persons dependent upon, the member.     Such associations shall be governed by this act and shall be exempt from the provisions of the insurance laws of this State, and shall not pay a corporation or other tax, and no law hereafter passed shall apply to them unless they be expressly designated therein.     And such fraternal beneficial associations may create, maintain, disburse and apply a reserve or emergency fund in accordance with its constitution or by-laws."

Section 4 of the act (now section 1411, R. S. 1899) requires the association to make an annual report to the state superintendent of insurance containing, among other things, answers to the following questions:

"5.   The amount received from each assessment for the year.

"7.   Number and kind of claims for which assessments have been made.

"9.   Does association charge annual or other periodical dues or admission fees?

"10.   How much on each one thousand dollars, annually or per capita, as the case may be?

"11.   Total amount received, from what source, and the disposition thereof."

From these two sections we think it is apparent that the Legislature intended that fraternal beneficiary associations should not be restricted to the assessment plan for the purpose of raising funds to pay death losses, but that they might raise funds by requiring the members to pay periodical dues to be fixed with reference to the age of the member and the amount of his insurance certificate, and that it is competent for the association to raise the mortuary fund by dues or by assessment or by both methods.   This intention of the Legislature becomes more apparent by reference to the law as it stood prior to the Act of 1897, found in section 2823, Revised Statutes 1889, which provided that these associations might provide for the relief and aid of their members and the families, widows and orphans of deceased members from the proceeds of assessments upon the members of the association. The Act of 1897, extends the power to provide funds for the purposes by assessments or by dues, thereby clearly indicating the purpose of the Legislature to enlarge and broaden the methods by which these associations might provide for raising benefit funds and thereby make more stable and certain the benefit that should accrue to the widows and orphans of the deceased members, and we think it was com-

petent for the defendant to raise the mortuary fund by the method it has pursued and that it may continue to do so, so long as the plan does not result in profit to the association.

The purpose of the defendant, as evidenced by its by-laws and constitution, is to pay each of its certificates of insurance in full on the death of a member. To accomplish this purpose it adopted the fixed monthly dues from each member at a rate which seems so far to meet the death losses that have occurred and has not created any considerable surplus. Should the losses exceed the income from dues, the power conferred by by-law No. 132 may be applied and additional installments of dues be collected, and, finally, the reserve fund may be drawn upon to pay death losses. These provisions are made to reasonably secure the certificates of insurance, and we think they are all authorized by the law of 1897 and are well adapted to the benevolent purposes of the order, to-wit, to secure a stipulated sum of insurance on the life of each member for the benefit of his widow and orphans at the least possible cost. These benefit certificates are not policies of insurance of the old-line type and the monthly dues are not paid as so much premium in consideration of so much insurance contracted to be paid at the death of the insured from which dues it is expected by both parties that the insurance company will derive a profit. The certificates are not issued with a view that the association may make a profit thereby but for the purpose of securing mutual protection without profit to the association, and herein again is the insurance widely distinguishable from the premium plan for a profit. Toomey v. Supreme Lodge K. of P., 147 Mo. 129; Jacobs v. Life Association, 146 Mo. 523; Wallace v. Bankers' Life Ass'n, 80 Mo. App. 102; National Union v. Marlow, 74 Fed. Rep. 775; Knights of Pythias v. Kalinski, 163 U. S. 294, relied upon by appellant did not have under review the law of 1897 and are inapplicable to the law and facts which control the case at bar.

It is contended that the defendant is not a fraternal bene-

ficiary association because it has a reserve fund and hence makes a profit. The last clause of section 1 of the Act of 1897, provides that "such fraternal benefit associations may create, maintain, disburse and apply a reserve or emergency fund in accordance with its constitution or by-laws," and section 4 of the act requires an annual report of such reserve fund to the state superintendent of insurance. So it is that express authority is given the defendant to create and maintain its reserve fund. The constitution and by-laws of the order provide for the payment of death losses from this fund in certain contingencies. No portion of it is reserved for the use and benefit of the corporation, as such, but it is reserved for the mutual benefit of members and as an additional security for the payment of death losses and it is therefore authorized and is a prudential provision.

By section 153 of the by-laws, the funds of the order are divided into three classes, the general fund, reserve fund and the mortuary fund. Section 155 of the by-laws provides that the reserve fund of the "Ideal" division shall consist of all amounts deducted in the settlement of death claims under certificates of this class as provided by section 118 (that is, twenty-five per cent of the face of the certificates of members who shall die within five years after the issuance of the certificate), and all interest, dividends or other profits arising from investments of these funds. This special reserve fund is set apart for the benefit of those holding certificates in this division and is available for the payment of losses by accidents, disabilities and old age benefits, and is also an additional security for the payment of death losses in this class.

Counsel for appellants contend that the suicide statute is applicable to all classes of insurance, and refers to Toomey v. Supreme Lodge K. of P., supra, as supporting their contention. In discussing section 5855, Revised Statutes 1889 (the suicide statute), the learned judge who wrote the opinion in the Toomey case, on page 137 of the report, makes the remark that by

an act passed in 1897 (Laws 1897, p. 129), the Legislature extended section 5855 "to all classes of insurance." The Act of 1897, referred to by the learned judge, is an act amending section 5869, Revised Statutes 1889 (pertaining to insurance on the assessment plan), and extends the provision of section 5855 (the suicide act) to all foreign companies doing business in this State on the assessment plan. The act does not mention and has no reference whatever to fraternal beneficiary companies. These are expressly exempt from the provisions of the general insurance laws of the State by section 1, of the Act of 1897 (p. 132, Laws 1897). The latter act evidently escaped the notice of the learned judge who wrote the opinion.

Under the Act of 1897, we are compelled to conclude that suicide was a valid and complete defense to the action. Certificate No. 3970, mentioned in the first count of the petition, was issued on May 5, 1896, and prior to the passage of the law of 1897. For this reason appellants contend that this certificate must be governed by the law of 1889 and that as no assessments were made to meet losses of this class, but the fund for that purpose was raised by the payment of periodical dues, it is old-line insurance and that the suicide statute does not apply. If the certificate was like an ordinary policy of insurance, or if it had vested any beneficial interest in any one prior to the death of the member, we would readily yield to the contention, but it is the settled law that neither the member nor the beneficiary had any vested interest in the certificate of insurance prior to the death of the member. Hofman v. Grand Lodge B. L. F., 73 Mo. App. 47; Grand Lodge A. O. U. W. v. Reneau, 75 Mo. App. 402; Miller v. Grand Lodge O. B. A., 72 Mo. App. 499.

The certificate was accepted with the condition that it was subject to the constitution and by-laws then in force or that might thereafter be adopted, and the constitution and by-laws then in force and that were thereafter adopted were made a part of the contract. There were no vested rights in any one

that could be affected by the change in the constitution and by-laws made in 1898. The member agreed that these amendments might be made, and the evidence is that after they were made and were promulgated by the supreme officer of the association and published in its official organ, Morton, who is presumed to have had knowledge of the amendment, continued to pay his monthly dues regularly without protest or objection down to the date of his death, so that both by contract and by adoption the certificate was brought under the provision of the amended constitution and by-laws of 1889 and comes within the provision of the Act of 1897.

We conclude that the defense of suicide was available against both certificates and affirm the judgment. *Barclay,* and *Goode, JJ.,* concur.